# The Turnpike Company *against* The Commonwealth.

When a purchaser would rescind a contract, and entitle himself to recover back the consideration paid by him, he must place the vendor in the same situation he was in before the sale.

Where a right exists, but no remedy to enforce it, it is within the constitutional power of the legislature to provide one.

The act of the 19th of March 1824, entitled "an act to authorise the governor to take certain measures respecting the Pittsburgh and New Alexandria Turnpike," is constitutional.

ERROR to the common pleas of *Westmoreland* county.

This was an action of *assumpsit* for money had and received by the Commonwealth of Pennsylvania against the Pittsburgh and New Alexandria Turnpike Road Company. The facts of the case are sufficiently stated in the opinion of the court to illustrate the principles determined.

*Alexander* and *Coulter,* for plaintiffs in error.
*Foster,* for defendant in error.

The opinion of the Court was delivered by

Rogers, J.—The fifth section of the act of the 13th March 1816,

authorises the governor to subscribe on behalf of the Commonwealth for stock in the Pittsburgh and New Alexandria Turnpike Company, two-thirds of the amount in proportion to the distance that he was required by law to subscribe in the stock of the Greensburg and Pittsburgh Turnpike Road Company. The officers of the company filed a draft of the road in the secretary's office, in which, either by accident or design, a mistake is made as to the length of the road. The governor, on the faith of the correctness of the draft, subscribed the amount of stock, and in the proportions required by the act.

This suit is brought to recover back 4311 dollars 48½ cents, alleged to have been overpaid by the state treasurer to the company. The action, which is for money had and received, disaffirms the contract between the state and the company, and on this ground it is objected, that the suit cannot be sustained until the excess of stock is transferred to the company.

When a purchaser would rescind a contract, and entitle himself to recover back the consideration paid by him, he must place the vendor in the same situation he was in before the sale. This position is fully sustained by authority, and has been repeatedly recognized by the court. Berrikins *v.* Bevans, 3 *Rawle* 35; *Brown on Sales* 341, 375; Fisher *v.* Lancaster, 1 *Campbell* 190; Groning *v.* Markham, 1 *Stark.* 257; Rowe *v.* Osborne, 1 *Stark.* 140; Ritchie *v.* Summers, 3 *Yeates* 351; Thompson *v.* Wynd, 12 *Wheat.* 183; Burton *v.* Stewart, 3 *Wend.* 238; *Saund. on Pl. and Ev.* 303, 304; Kimbal *v.* Cunningham, 4 *Mass. Rep.* 502 ; Connor *v.* Henderson, 15 *Mass. Rep.* 319; Currie *v.* Pennock, 14 *Serg. & Rawle* 51; Sleighman *v.* Jeffries, 1 *Serg. & Rawle* 477 ; Grimaldin *v.* White, 4 *Esp. N. P.* 95.

There is nothing in the reason of the thing, or in the act of the 19th of March 1824, which exempts the Commonwealth from the operation of this rule. As an individual could not, neither could the Commonwealth sustain a suit until they have transferred, or offered to transfer to the company the excess of shares for which, by a misapprehension of facts, they subscribed, and for which they received certificates of stock. Until this be done the parties are not in the same situation they were previous to the contract.

If, upon trial, it shall be found that there was a mistake in the subscription for stock, the Commonwealth would have an unquestionable right to recover back the money overpaid. All such mistakes may be corrected in an action of *assumpsit* for money had and received ; and more particularly will the court grant relief where there has been imposition and fraud. The report of the commissioners appointed by the governor, that the road was well made, will not alter the position of the parties. For even admitting the fact that the commissioners measured the road, yet if there was a mistake it may be corrected by suit.

The defendant further contends, that the act of the 19th of March 1824 is unconstitutional. But we are at a loss to see in what respect. On a representation, supported by affidavits, that the trea-

[Turnpike Company v. The Commonwealth.]

surer of the Pittsburgh and New Alexandria Turnpike Road Company had drawn more money from the state treasury than the company was legally entitled to, the legislature directs the governor to appoint three commissioners to survey the road and report its exact length; and if it shall appear by the report that more money has been drawn from the state treasury than the company was lawfully authorised to receive, the act makes it the duty of the governor to direct suits to be commenced in the name of the commonwealth to recover back the amount of money so illegally drawn from the treasury.

The second section directs a prosecution against any person who, upon investigation, shall be found to be illegally and fraudulently concerned in drawing the money out of the state treasury.

Of neither of these sections have the defendants or any individuals a just right to complain. The effect of the act is not to alter or change the rights of the parties, but to put the matter in a train of judicial investigation; and this the persons implicated should not attempt to evade. The report of the commissioners is not made conclusive evidence of the facts, but is merely intended as the foundation of ulterior proceedings. It is open to the defendants, notwithstanding the report, to show on the trial the integrity of their conduct in relation to the transaction. It is referred, as is right and just, to the proper tribunal, where the rights of the parties are to be investigated and the law administered as in a contest between individuals.

The legislature have shown a proper regard to the rights of the company. The governor is directed to cause suits to be brought only when it is ascertained that more money has been drawn from the treasury than the company is lawfully authorised to receive. The act creates no new right, but is merely remedial of an existing right. In the case of individuals it cannot admit of dispute, that remedies have been repeatedly given by legislative enactment where none existed before; and it may be asked, what reason is there that the legislature should not have the same power in the case of the commonwealth. The body politic has its claims on the constituted authorities as well as individuals. If this could not be done in such cases, it would follow, that provision might be made for collecting the debts of every one else, but the debts of the state must go unpaid whenever legislative aid becomes necessary. In this view of the principle we are supported by the supreme court of the United States in the case of the Lessee of Livingston *v.* Moore, 5 *Peters's Rep.* 469.

But this is not even the case of giving a legislative remedy where none existed before. It does not require the authority of an act to enable the governor to cause suit to be brought in the name of the commonwealth against persons who have illegally abstracted money from the treasury. It would be his duty to do so without the authority of an act for that special purpose.

The act also contemplates a suit against such individuals as may have been illegally and fraudulently concerned in the attempt to defraud the state; and with this view they have provided, that if

suit shall be commenced against any person, who, upon trial, shall be found not liable, the suit shall not on that account abate, but judgment may be rendered against such of the defendants as are found liable in the same manner as if the others were not joined. This it must be observed, is not an action for a conspiracy against individuals, but an action of *assumpsit* for money had and received, against the company in their corporate capacity. This part of. the section has therefore no bearing on this suit; but if it had, there would be no difficulty in saying, that it was fully within the constitutional power of the legislature to make such a provision.

Judgment reversed, and a *venire de novo* awarded.