## PARKISON vs. BRACKEN.

1. PATENT FROM UNITED STATES—EVIDENCE.—In an action at law the patent of the United States is conclusive evidence that the title to the land is in the patentee, and evidence will not be admitted to establish an adverse *equitable* title.

2. ELDER PATENT PREVAILS AT LAW.— If there should be two patents for the same tract of land, the elder patent must prevail at law.

3. EQUITABLE TITLE. — If the defendant has an *equitable title* to the land, superior to that of the patentee, he must resort to a court of equity to assert it.

4. RECEIVER'S RECEIPT.— The receiver's receipt for the same tract of land embraced in the patent, showing that it was entered by the defendant at the land office, anterior to the date of the patent, is not evidence for the defendant to defeat a recovery in an action of ejectment brought by the patentee, nor is any evidence admissible which goes only to show an *equitable* title in the defendant adverse to the patentee.

5. CONTINUANCE.— A continuance asked for by the defendant in an action at law, to enable him to procure testimony which would only go to establish an equitable title in himself adverse to the patent, for the purpose of defeating a recovery by the patentee, ought not to be granted.

6. PRESUMPTIONS.— A patent which appears on its face to have been regularly issued, will be presumed to have been signed and executed according to law until the contrary shall be made to appear, and the court cannot undertake to say, from the mere inspection of the handwriting, that the name of the president was not signed by the proper person.

The law presumes that public officers do their duty, and that in their

Parkison vs. Bracken.

official acts they conform to the requirements of the law, until the contrary is made to appear.

7. POWER OF CONGRESS, ETC. — Congress has the sole power to dispose of the public domain, and to declare the dignity and effect of titles emanating from the United States, and the act of congress to confirm land patents, approved March 3, 1841, is valid and effectual, and cures all defects provided for in patents that had been previously issued; it relates back to the date of the patent confirmed, and it makes no difference that a suit was pending on the patent at the passage of the act.

ERROR to the District Court for *Iowa* County.

This was an action of ejectment, brought by *Bracken* against *Parkison*, in the Iowa county district court, to recover a tract of eighty acres of land. At the September term, 1841, when the cause was called for trial, *Parkison* moved the court for a continuance of the cause, for the purpose of enabling him to procure testimony from the General Land Office at Washington, to prove various matters tending to show that he had a superior equitable right to enter the land in controversy; in order that by connecting such testimony with the receiver's receipt which he held for the same tract, of anterior date, he might defeat the patent which had been issued to Bracken. The district court refused to grant the continuance, and decided that the facts which he expected to prove would not be competent testimony in his defense. Upon the trial, the plaintiff below offered in evidence a patent from the United States to him for the land in dispute, dated April 27, 1840. The patent was signed "Martin Van Buren, by M. Van Buren, Jr., Sec'y." From the appearance alone of the writing, it would seem that both names were not written by the same hand. The defendant's counsel objected to the reading of the patent in evidence, alleging that it was evident, from its face, that the president's name was not written by the secretary authorized to sign patents, and that no other person could lawfully sign the name of the president to a patent. There was no evidence offered to sustain the objection, and the court overruled it, and permitted the patent to be read to the jury. After the

plaintiff's testimony was closed, the defendant offered to read in evidence the receipt of the receiver of public money at Mineral Point, dated 15th March, 1836, by which it appeared that on that day he entered, at the land office at Mineral Point, the tract of land in controversy ; and to accompany it by other testimony, similar to that, to procure which he asked a continuance ; to all which testimony the plaintiff's counsel objected, and the court rejected the testimony.   Exceptions were taken to these various decisions, and a verdict and judgment were rendered in favor of the plaintiff.   To reverse this judgment *Parkison* assigned the following errors in the record of the proceeding in the court below :

I. The court below erred in overruling the motion of the defendant below for a continuance.

II. The court below erred in admitting in evidence the patent offered by the plaintiff below.

III. The court below erred in excluding the receiver's receipt offered by the defendant below as evidence.

IV. The court below erred in excluding the evidence offered by the defendant below.

By order of the district court, the patent was produced for the inspection of this court.

*Moses M. Strong*, for plaintiff in error :

1. The title to land can only pass from the United States in pursuance of law, and in all cases where the laws of congress prescribe one mode in which the title shall be passed, no other mode can be substituted by the officers of the government.   By the former laws of congress, all patents for land had to be signed by the president himself.   By the present law, which was passed prior to the date of the patent in this case, a secretary appointed for that purpose may sign for the president. Acts of Congress of March 2, 1833, and July 4, 1836. We contend that under the present law, no person but the secretary is authorized to sign the name of the president to the patent.   The patent produced by the defend-

Parkison vs. Bracken.

ant in error as evidence of his title shows on its face that the names of the president and secretary were not written by the same hand. No testimony could make the matter more plain. But the defendant in error insists that this defect is cured by the act of congress to confirm land patents, approved March 3, 1841. Although it cannot be questioned that congress may pass laws to vest the title to land in any person, in the first instance, without limitation or restriction, yet it cannot, by a *general* law, make a patent valid that was invalid before. The rights of other persons than the patentee cannot be prejudiced by the retrospective character of the act. Again, the act of confirmation was passed after the commencement of this suit. When the suit was commenced the patent was bad, and the plaintiff below could not then have recovered upon it; the act cannot relate back so as to affect or entirely change the rights of the parties, in the course of litigation, at the time of its passage.

2. The record shows that the receiver's receipt to Parkison for the land in dispute bears date the 15th March, 1836, and the patent by which the defendant in error recovered below is dated 7th April, 1840. The receipt, connected with the other evidence offered, would have showed an inchoate title in the plaintiff in error prior to the date of the patent. It was a link in his testimony, and the court could not know but it would be followed by a patent according to the entry. According to all authorities upon the subject, *Parkison* had an equitable title to the land. The testimony which he offered would have shown that his title was acquired before the patent issued to *Bracken*, and the court ought to have permitted him to establish it by proof. Although, technically speaking, his title was but an equitable one, if it was better than *Bracken's* it ought to have been sufficient for his defense. Conflicting decisions are to be found upon this principle, but the weight of authority and of reason is in favor of the position assumed. *Brush v.*

*Ware,* 15 Pet. 93; *Polk's Lessee v. Wendell,* 9 Cranch, 87; S. C., 5 Wheat. 293; *Reader v. Barr,* 4 Ohio, 446; *Miller v. Kerr,* 7 Wheat. 1; *Hoofnagle v. Anderson,* 7 id. 212; *Ross v. Doe,* 1 Pet. 655. In the last case, the party was allowed to go behind the patent in a trial at law to defeat its legal effect.

*F. J. Dunn,* for defendant in error.

1. A patent from the United States is conclusive as to the title to lands, and in an action at law, a party cannot set up an adverse title against the patentee or his assigns or legal representatives. If he has an equitable title, a court of law cannot decide upon it; he must apply to chancery for relief. If there are two patents for the same tract, the rule applies in favor of the elder patent, and in such case the junior patent, if it amounts to any thing, is only evidence of an equitable title. *Wilcox v. Jackson,* 13 Pet. 498; *Ross v. Doe,* 1 id. 656; *U. S. v. Arredondo,* 6 id. 725; *Bagnall et al. v. Broderick,* 13 id. 436, 450; 11 Wheat. 580; 5 id. 293; 7 id. 151.

2. There was no evidence offered to impeach the patent, and there is no principle of law that will authorize the court to say, from *inspection only,* that an official paper has not been signed as it purports on its face to have been done. Admitting that the error existed in the signing of the patent, as is alleged, the United States only could take advantage of the defect, and they had full power to correct it, and the correction has been made. The act of congress of March 3, 1841, was passed to confirm titles that had been defectively granted to the purchasers of the public lands, and cures the alleged defects in this patent, if they existed at all.

*T. P. Burnett,* in continuation:

A patent is a record and proves itself. When required as a matter of evidence, nothing further is necessary than its production, and if it is regular on its face, it must be admitted. This patent appears to be regular on its face, and although the error may exist in signing, as is contended, it is not void; at most, it is only voidable,

and independently of the act of congress passed in confirmation, the plaintiff in error could not impeach it in this suit. Where a patent, regular on its face, is voidable, it can only be avoided by a proceeding in chancery for that purpose. *Jackson v. Lawton*, 10 Johns. 23. If a patent is issued by fraud or mistake, unless the fraud or mistake appears upon its face, it can only be avoided by a suit in chancery for that purpose. *Id.*; *Jackson v. Hart*, 12 Johns. 77. Further, the court is bound to presume, until it shall be made to appear otherwise, that, where the law requires public officers to perform certain acts in a particular manner, they have done their duty in the manner which the law prescribes. This is a presumption of law. See 3 East, 200; *Hartwell v. Root*, 19 Johns. 347; *Polk's Lessee v. Wendell*, 9 Cranch, 98; S. C., 5 Wheat. 304; *Patterson v. Jenks*, 2 Pet. 237.

But, if the patent could be impeached in this suit (which is not admitted), how is it to be done? Surely by him who alleged the irregularity proving that it existed. This has not been attempted, and the court is asked to decide in his favor, upon bare inspection. The court is required to know, judicially, the handwriting of the officers of the government, and to decide from that knowledge whether signatures be genuine or not. There can be no authority found to sustain the position, and it cannot be necessary to refer to any to refute it.

A patent, then, being a record, and proving itself, requiring no other evidence to support its authenticity or establish its validity, and this being regular on its face, and purporting to have been issued in the manner prescribed by law, and standing unimpeached by any testimony against it, the court is bound to acknowledge it for what it professes to be, and give it full weight as evidence of title in the patentee.

MILLER, J. This was an ejectment, brought by the defendant in error against the plaintiff in error, in the district court of Iowa county.

.The court admitted in evidence, on the part of the plaintiff, a patent purporting to have been signed in the name of the president of the United States by his secretary for that purpose. The patent appears on its face to have been regularly executed, sealed and recorded, according to law; but, because the filling up of the patent and the name of the president appear to be in the same handwriting, and the signature of the secretary in another, it was thereby inferred that the president had not signed it, or that the secretary had not signed the president's name according to the requisites of the statute. The objection was merely made on the ground of this supposition, without offering to produce witnesses to prove that it was not executed according to law. The patent appearing on its face to have been legally executed, sealed and recorded, it is presumed to have been done by the proper officers until the contrary appears. 3 Starkie's Ev. 1248, 1249, 1250; 10 East, 216; 3 id. 200; *Hartwell v. Root*, 19 Johns. 347; *Polk's Lessee v. Wendell*, 9 Cranch, 98; 5 Wheat. 304; 2 Pet. 237; 15 id. 490.

But, if this objection to this patent were sustained by legal proof, the act of congress entitled an act to confirm land patents, approved March 3, 1841, cured this alleged defect. It is alleged, however, that it only became a legal patent, and vested the legal title to the land in the patentee, on the date of its confirmation, and not before. Congress has the sole power to dispose of the public domain and to declare the dignity and effect of titles emanating from the United States, and as it is not restrained by the constitution from passing such a law, its propriety and constitutionality cannot be questioned. Even in the States where legislatures are restricted and restrained from passing laws impairing the obligation of contracts, such statutes of confirmation or correction are common. The supreme court of Pennsylvania, in the case of *Underwood v. Lilly*, 10 Serg. & Rawle, 97, decided that the act of assembly of that State, confirming certain judgments in York county, was not unconstitutional, although

retroactive.   A similar decision was made on the consti-
tutionality of the act curing defects in previous acknowl-
edgments of deeds by *femes covert.   Barnet v. Barnet,*
15 Serg. & Rawle, 72; *Tate v. Stooltzfoos,* id. 35;
*Mercer v. Watson,* 1 Watts, 356.   A similar decision
was made by the same court respecting an act provid-
ing for the closing of the concerns of banking institu-
tions, although that act operated upon suits pending
at the time of its passage, so as to render them valid.
*Blackney v. The Bank of Greencastle,* 17 Serg. &
Rawle, 64.   Similar decisions have been made, to a
very great number, on similar laws, some of which will
be found in 1 Rawle, 181 ; 2 Watts, 433 ; 2 Rawle, 374;
7 Serg. & Rawle, 260 ; 11 id. 191.

The third and fourth errors assigned are upon the
rejection of a duplicate receipt from the receiver of pub-
lic moneys for the Mineral Point Land District, to defend-
ant, for the land in dispute, and other evidence connected
with the possession and entry of this land previous to the
patent.   This receipt is dated on the 15th March, 1836,
and the patent of plaintiff is dated on the 27th April,
1840, but it does not appear when the patentee paid for
the land and obtained his receipt.   In a court of law the
patent is conclusive.   Even in the case of conflicting
patents, the first patent is conclusive, and relief can only
be had in a court of chancery.   10 Johns. 23; 12 id.
76 ; 9 Cranch, 98 ; 15 Pet. 105; 7 Wheat. 1 ; 15 Pet. 490.
It is true that there is no objection to going into facts
behind the patent in support of the title, particularly in
States where there is no court of chancery, it may be
necessary ; but in this Territory we have a court of chan-
cery of sufficient power to inquire into the equitable
interests of the parties.   There might have been no im-
propriety in receiving the evidence offered, but it could
not prevail against the patent of the plaintiff, under the
charge of the court ; but, as there was no offer to accom-
pany the evidence offered with a patent, the court was
right in rejecting it.   An equitable title cannot prevail in

an ejectment against a legal title. In an ejectment the parties are confined to their legal rights. If there is equity in the case it must be disposed of in the court of chancery.

The first error assigned relates to the refusal of the court to put off the trial on affidavits filed. As these affidavits contain a statement of facts not then in the possession of the party, as the ground of the application, and as it abundantly appears that the same or similar matters were properly rejected by the court, and that these would also have been rejected if offered, the court will not reverse the judgment.

Judgment of the district court affirmed, with costs.