[PHILADELPHIA, JANUARY 24, 1829.]

## EHRENZELLER *against* The UNION CANAL COMPANY.

### IN ERROR.

The secretary of the Union Canal Company of *Pennsylvania,* incorporated by the act of the 2d of *April,* 1811, was such an officer, within the meaning of the supplemental act of the 29th of *March,* 1819, as the Legislature intended should receive no salary until the works were actually recommenced upon the canal.

Such an officer can claim no compensation for services, upon a *Quantum Meruit.*

The act of the 29th of *March,* 1819, does not violate the 10th section of the 1st article of the Constitution of the *United States.*

ON the return of a writ of error to the District Court for the city and county of *Philadelphia,* it appeared that the plaintiff in error, *George Ehrenzeller,* brought this action of *assumpsit* against the Union Canal Company, to recover a compensation for his services as their secretary, from the 17th of *October,* 1818, to the 21st of *May,* 1821.

The declaration contained four counts; the *first* of which claimed a sum of money, " for the pay of the said *George* before that time and then due and payable, from the said defendants to the said *George* for the services of the said *George,* before that time, by him, the said *George,* rendered and performed, as secretary of the Union Canal Company, duly appointed before that time, agreeably to the charter and by-laws of the said company."

The *second* count was for work and labour, care and diligence of the said *George,* expended upon the business of the said company, in preserving their records, preparing their contracts, preserving their muniments of property, &c.

The *third* was on a *Quantum Meruit* for work and labour, care and diligence, as secretary of the defendants.

The *fourth* count was on an *Insimul Computassent.*

The defendants pleaded *non-assumpserunt,* and payment, with leave to give special matter in evidence.

The case, as disclosed by the evidence given on the trial, was as follows:—

The Union Canal Company of *Pennsylvania* was incorporated by an Act of Assembly passed the 2d of *April,* 1811. (5 *Sm. L.* 266.) By the 6th section of that act, the stockholders were directed to choose five managers, one of whom was to be president of the company. The president and managers were authorized to appoint a secretary, engineers, and such other officers, and to allow them such compensations as they should find necessary and expedient.

In the year 1811, the president and managers were elected by the stockholders, and the company organized. On the 24th of *July,*

1811, the salaries of the president and managers were fixed by the stockholders, and on the 16th of *November*, 1813, their salaries were increased, that of the president to fifteen hundred dollars, and those of the managers to three hundred dollars *per annum.*

On the 26th of *July*, 1811, a secretary was appointed, who resigned in *October*, 1816, when the president and managers appointed the plaintiff their secretary. No particular sum was fixed by a vote of the board, as a salary for the secretary; but it appeared that three hundred dollars *per annum* had been allowed to that officer; and, at that rate, the plaintiff was paid up to the 17th of *October*, 1818. The plaintiff held the situation of secretary until the 21st of *May*, 1821, during which period he discharged his duties with fidelity and to the satisfaction of his employers. In addition to keeping the minutes of the Board of Managers, he had the principal care of the archives of the company, was required to be present at all the transfers of stock, and drew several contracts with the managers of the different classes of the Union Canal Lottery.

The plaintiff produced his account, audited and settled by the proper officers of the company.

The defendants admitted the plaintiff's right to recover for services performed prior to the 29th of *March*, 1819; and against the residue of his claim, they relied, for a defence, upon the 7th section of the act of that date, (7 *Sm. L.* 228,) entitled, "An act supplementary to an act, entitled 'An act to incorporate the *Union Canal Company* of *Pennsylvania*,' which is in these words: '*Be it further enacted,* &c. That, from and after the passage of this act, no compensation shall be allowed by the said company to its officers, until the works are actually recommenced upon the canal; after which time the salaries may be regulated by the stockholders in the customary manner: *Provided,* That if the said work shall be suspended or interrupted for the space of three months, the salaries allowed to the said officers shall cease from the time of such suspension, and until the work be recommenced.'"

On the 12th of *July*, 1819, a letter was sent by the commissioners named in the act of the 29th of *March* preceding, to the president and officers of the company, informing them that their efforts to procure additional subscriptions had entirely failed; declining to make any further attempts to procure them; and recommending the raising of money by lottery, which was accordingly done.

The lottery fund amounted, on the 21st of *May*, 1821, to upwards of seventy thousand dollars, which had accumulated in part prior, and in part subsequent to the 29th of *March*, 1819. The company had also a considerable real estate, which had been taken for the route of the canal, before their proceedings had ceased in consequence of the expenditure of all their funds derived from private subscriptions.

In consequence of the act passed on the 26th of *March*, 1821, (7 *Sm. L.* 393,) which pledged the aid of the state to the work, sub-

(Ehrenzeller *v.* The Union Canal Company.)

scriptions were obtained under the act of the 29th of *March*, 1819, and on the 11th of *April*, 1821, the fact was communicated to the president and officers of the company, by a letter from the commissioners; whereupon, there not being time to call a meeting of the stockholders, the president and officers ordered two papers to be prepared, to be handed for signature to the individual stockholders, declaring their acceptance of the new act. The board fixed the 21st of *May*, 1821, for the meeting of the stockholders to elect a new board; and this, it was contended for the defendants, was their first acceptance of the provisions of the act of the 29th of *March*, 1819.

On the 21st of *May*, 1821, a meeting of the stockholders was held, when officers were elected, agreeably to the provisions of the act of 1819. The plaintiff continued to hold the situation, and perform the duties of secretary, until the 21st of *May*, 1821, the original contract between him and the president and officers of the company never having been changed by the parties.

The evidence being closed, the case went to the jury under the following charge from the President Judge:—

"The questions of law arising in this case have been determined on a former occasion by this court, and I have only to express their opinion to you, that the plaintiff may be enabled to except to my charge, and have his bill of exceptions and writ of error to the Supreme Court. I state the law to be—That upon the facts in evidence, in this case, the plaintiff cannot recover from these defendants any compensation under either count in this declaration for the services rendered after the 29th of *March*, 1819. The law upon the facts is not altered by the manner of declaring in the second and third counts in this declaration. Nor is the plaintiff's case the better by reason of the examination and approval of his account. He is entitled to recover, if at all, by virtue of his appointment as secretary on the 1st of *April*, 1816, and because of the services which he rendered in that character. He is not entitled by law to any compensation for his services as secretary to the Board of Managers of the company, after the 29th of *March*, 1819. Your verdict, therefore, should be for $          , with interest, being the amount due him on the 29th of *March*, 1819, and the interest."

To this charge the plaintiff's counsel excepted, and sued out a writ of error.

*W. M. Meredith* and *Scott*, for the plaintiff in error.

1. If the 7th section of the act of the 29th of *March*, 1819, be construed to extend to the present case, it is utterly void, because it is in violation of the 17th section of the 9th article of the Constitution of *Pennsylvania*, and the first part of the 10th section of the 1st article of the Constitution of the *United States*. It violated, in the first place, the contract created by the charter between the legislature and the company, which was a private corporation,

(Ehrenzeller *v.* The Union Canal Company.)

the rights of which cannot be impaired without its own consent. The king cannot interfere with the chartered rights of a corporation without trial and judgment, nor, on the same principle, can the legislature of *Pennsylvania,* without the consent of the corporation. No consent was given by the Union Canal Company to the act of the 29th of *March,* 1819, until the 21st of *May,* 1821; at which period the services of the plaintiff ceased. And, if such consent had been given, it would have been in violation of the contract entered into by the company with the plaintiff, to pay him the compensation agreed upon so long as he should continue in office, and until he should have notice of removal. 4 *Wheat.* 207, 656, 659, 662, 667, 682, 711. 8 *Wheat.* 84, 92. 3 *Burr.* 1661. 3 *Kyd on Corp.* 65.

But the court will, if possible, give such a construction to the act of assembly, as will reconcile it with the Constitution; and in this there is no difficulty. In the first place, it was not intended to apply to the old officers of the company. The legislature contemplated a reorganization of the company, and intended to prevent, in future, the payment of salaries where no services were performed. It was not their intention to go back, and take away salaries from officers who were then receiving them.

But, in the second place, if the act was intended to embrace the old officers, it did not extend to the secretary. He was not such an officer as came within the provisions of the law, which referred to those who received large salaries and performed no duties. He was the only officer belonging to the corporation who received a small salary, and performed very laborious duties. If the business of the company was neglected, it was not his fault. He had nothing to do with the direction. The evil to be remedied, was, that the works upon the canal had ceased; and the object of the law was, that they should be recommenced. To effect this, the act of assembly provided a stimulus to those who had the management of the concerns of the corporation. Its provisions should, therefore, be confined to officers of that character, and not extended to mere ministerial officers, such as the secretary, engineers, &c., who had no control over the affairs of the company, and without whose previous services the works could not be recommenced.

The provisions of the act of assembly, relative to the salaries of officers, clearly shew, that the secretary was not within the view of the legislature. Upon the recommencement of the works, the salaries of the officers were to be regulated by the *stockholders* in the *customary manner.* The officers referred to must, therefore, have been those whose salaries it had been *customary* for the *stockholders* to regulate, and not the secretary and engineers, whose salaries had never been regulated by the *stockholders,* but by the *managers* in whom their appointment was vested. They were properly not the officers of the company, but of the managers.

But, if the secretary be comprehended by the act, the only rea-

(Ehrenzeller *v.* The Union Canal Company.)

sonable construction of it is, that salaries should not be *paid* until after the recommencement of the works; not that no compensation should, at any time, be allowed for services rendered before that period.   The most laborious part of the business was to restore to order the deranged affairs of the company.   Active exertions were to be made; contracts to be entered into; skill, prudence, and diligence were to be exercised; the president was restrained from pursuing any other mode of gaining a livelihood.   Can it be pretended, that for all these exertions and sacrifices, no compensation whatever was to be made? or could it be expected, that if none were to be made, the works would ever be recommenced?   Some of the most important and laborious of the duties of the secretary, such as the drawing of contracts, and other preparatory services, must necessarily have been performed before the actual recommencement of the works. Those which were to be performed afterwards, were comparatively light.   Upon the principle by which it is attempted to cut off the salary of the secretary, the surveying engineer, upon whose skill, capacity, and fidelity, the whole success of the work must have depended, would be denied any compensation whatever for his services, since those services must all have been rendered before the works could go into operation.   The intention of the legislature was, that no salaries should be paid where no duties were performed.   The former were to depend upon the latter; and when the recommencement of the works testified that duties had been rendered, compensation was to be allowed, as well for services previously, as for those subsequently performed.

The act of 1819 continues the obligations of the old corporation. All the privileges and immunities, and, consequently, all the burdens of the old company, were vested in the new one.   Strictly speaking, it was not the creation of a new corporation, but the reorganization of the old corporation, under a new direction.   The defendants admit their liability for services rendered prior to 1819, and therefore are precluded from saying they are not bound by the contracts of their predecessors.   They cannot take all the property and all the benefits, and throw off the debts of those to whom they succeed.   The old board acknowledged the plaintiff's claim, which was regularly passed by their proper accounting officers.

If the contract cannot be enforced for the salary of the plaintiff as secretary, he is entitled to recover on a *Quantum Meruit*, for his services as an individual.   The defendants cannot deny his official character, in order to deprive him of his salary, and assert that character to prevent his recovering a just compensation for services actually rendered.

*Binney*, for the defendants in error.—It was competent to the company alone, to object to the constitutionality of the act of assembly by which they were remodelled; and they have made no objection.   From the lips of third persons, such an objection can-

(Ehrenzeller *v.* The Union Canal Company.)

not come; nor can it now come from the company themselves, because they have accepted the charter, not merely from the time of their new organization, but *in toto.* Their acceptance has a retrospective operation from the date of the law. To say otherwise, would be to permit one party to adopt a contract in a sense different from what the other party intended; for it is certain the legislature intended that the law should go into operation from its date. The question, therefore, whether the legislature had power to pass the law, though by no means a difficult one, does not arise. The company have accepted the charter unconditionally, and do not now object. The objection is raised, by a third person, for them, and without their consent. It is true, that if he has a contract which is violated by the law, he may assert its unconstitutionality. But the plaintiff never had an express contract with the company after 1816, when he was appointed. He received no appointment afterwards. While he was acting as secretary in 1819, this act of assembly was passed. With a full knowledge of its provisions, he goes on to render services, without any new appointment or contract of any kind, knowing that if the law is valid, he cannot be paid. When, therefore, it was rendered valid by the acceptance of the company, he could not complain of the loss of his salary, because he acted with his eyes open, and had a mere implied contract, dependant upon the acceptance or non-acceptance of the charter by the company.

As to the construction of the act: Its terms are plain, and where there are no ambiguities, the court should make no subtle efforts to find out other meanings than those the words import. It is clear from the bill of exceptions, that the plaintiff never claimed in any other character than as secretary. There was no evidence of services rendered otherwise than as secretary, and the opinion of the District Court was, that he could not recover upon the common counts, for services rendered in that capacity. If he was an officer, and his services were rendered as such, he cannot dodge the act by claiming a compensation on a *Quantum Meruit.* The question then is, was he an officer? That he was so in point of fact, there is no doubt; but whether he was so, within the meaning of the act, is another mattter. It is said that he was not the officer of the company, but of the managers; but the minutes show, and so does the bill of exceptions, that whenever any thing was to be done by the company, he performed it as their secretary. He attended the meetings of the company, and superintended the transfers of stock. Besides, the managers were the representatives of the company, and their acts were the acts of their constituents. The bill of exceptions states that the plaintiff in error was appointed by the managers, "*secretary of the company,*" and then goes on to say, that he was entitled to compensation for his *services aforesaid,* that is, *as secretary of the company.* The distinction between engineers

(Ehrenzeller *v.* The Union Canal Company.)

and officers is obvious, and need not be dwelt upon. Every com-pany must have a secretary, and if he is not an officer of the com-pany, it is impossible to imagine who is. He is more identified with its concerns than any other officer. He, as well as the other officers, doubtless performed some services, but those services were not such as the legislature thought entitled them to compensation. They declared, that until the recommencement of the works, the officers should receive no salaries, and the company accepted the terms offered. The president, managers, secretary, all the officers of the company were before the legislature when the law was passed, and no distinction was made between them. All were considered as sufficiently interested in the concerns of the corporation to per-form the services preparatory to its reorganization. Whether the officer was appointed by the stockholders or the managers, was of no moment; the object being to cut off the salaries of all sinecure officers, no matter by whom appointed, in order to preserve the funds for the future operations of the company.

It is said the act was intended to apply to officers *to be* appointed; but such an interpretation would overturn its express language, and contravene its whole object. The legislature have said, that the law should go into immediate operation; and, if it had been otherwise, it would have been in the power of the old company to continue the old abuses as long as they pleased.

The account signed by the auditor and counsel avails nothing. It was against law, and of no effect; and it would have been the same thing if all the managers had acknowledged its correctness. They were bound, if at all, not as individuals, but in their corporate ca-pacity, and could not, by their approbation, give validity to that which was contrary to law.

The opinion of the court was delivered by

Rogers, J.—On the 2d of *April,* 1811, the legislature passed the act to incorporate the Union Canal Company of *Pennsylvania;* and, by the 28th section, gave the company authority to raise, by lottery, three hundred and fifty thousand dollars; and provided, that the profits arising from the lotteries should not form a capital stock of the company, upon which any dividend should be made to the stockholders, but that the same should be considered as a bounty to the corporation, to enable them to make the tolls as low as possible. The company, after having commenced the work, suspended their operations, having raised, and continuing to raise, large sums of mo-ney by drawing the lotteries authorized by the act. In the annual return to the legislature, at the session of 1819, the managers made a statement of their accounts; in which it appeared that large salaries had been paid and were paying to the officers of the company, while little or no duties were performed, and that out of the funds (for they had no other,) appropriated by the legislature, for the special purpose of making the tolls as low as possible. The plaintiff was

the secretary of the company, and as such was returned in the statement of their accounts, as in the receipt of a salary of three hundred dollars *per annum.* With a knowledge of these facts, which are alleged in the preamble to the section to be notorious, and for the purpose of preventing such abuses in future, the legislature enacted, " That from and after the passage of this act, no *compensation* shall be allowed by the company to its officers until the works are actually recommenced upon the canal; after which time the salaries may be regulated by the stockholders in the customary manner; *Provided,* That if the said work shall be suspended, or interrupted for the space of three months, the salaries allowed to the said officers shall cease for the time of such suspension, and until the work be recommenced." The defendants interpose this seventh section of the act of the 29th of *March,* 1819, in the way of the plaintiff's recovery, and allege that he comes within its words and spirit, which is denied by the plaintiff; and this, with the constitutionality of the act, forms the question which we are required to decide. The defendants say, the secretary is not an officer, and, if an officer, that he is the officer of the managers, and not of the company. With this I do not agree. He is as much the officer of the corporation as the cashier or clerk of a bank, who clearly are the servants of the company, and not of the directors, by whom they are appointed. And, in the 6th section of the act of the 2d of *April,* 1811, he is expressly called an officer; for it is provided, that the president and managers shall have authority to appoint a secretary, engineer, and such *other* officers, &c., and allow such compensation as they may find necessary and expedient.

But the plaintiff further contends, that although he may be considered an officer, in the strict sense of the word, he is not such an officer as was contemplated by the act; that the legislature had in view the president and managers, and not the secretary. It would appear to me to be strange, that if the legislature intended to discriminate between the secretary and others, who were in the receipt of large salaries out of public monies, they should not have expressed their meaning in explicit terms. And where they have not thought proper to do so, it is not competent for us to make the distinction. It would be wresting language from its obvious import, in favour of a person, whom it appeared to the legislature, and to us, has been well compensated for any services he may have performed. The duties of a secretary of a company, which had entirely suspended its operations, could not have been very onerous, and the legislature may well have been struck with the injustice, in his case, of squandering money appropriated to a public purpose, on a person whose duties were by no means burdensome.

The legislature, in the enacting clause, drop the word salary, used in the preamble, and say, " No *compensation* shall be allowed, by the company to its officers, until the works are actually recommenced."

(Ehrenzeller *v.* The Union Canal Company.)

They seem to have anticipated, that expedients would be resorted to, to avoid the operation of the section, and have used a word which embraces every species of allowance which may be attempted for the services of the officers of the company, all whose proceedings upon the canal had long since ceased, and whose only funds were derived from lotteries, granted by the legislature. It will not do for the officers of the company to say, that although we cannot receive compensation, by way of salary, yet we are entitled to pay, for our services, on a *Quantum Meruit.* If this should be the construction of the act, it would be in the power of the managers to defeat the manifest intention expressed by the legislature, the preservation of the fund to enable the corporation to lessen tolls to be charged for the use of the canal. It would only be necessary to allow the whole salary, by way of compensation, for the company, who had already abused their trust, would be the judges of the *quantum* of service, and its value. And if this should be permitted, in the case of the secretary, the same rule must be adopted as regards the president and managers, who, in the opinion of the legislature, had evidently shown their willingness to appropriate to themselves large salaries, for which adequate services were not rendered. It is to be remembered, that the services for which he claims compensation, were performed by him as secretary of the company, and in no other capacity whatever.

It remains now to inquire how far the act interferes with the 10th section of the 1st article of the Constitution of the *United States.* "No state shall pass any law impairing the obligation of a contract."

If the monies, arising from the lotteries authorized by the act, were public monies, as the legislature considered, and of which no person can entertain a reasonable doubt, it would be a matter of regret if they could not interpose to prevent the continuance of a system by which the funds were diverted from their legitimate objects. The trust, in the opinion of those whose duty it was to take care of the public interest, had been violated, and the legislature, with their accustomed moderation and regard to private rights, pass a law, not to compel them to refund, but to prevent, in future, a practice calculated to retard, if not wholly to prevent, the object of the grant, an internal communication between the waters of the *Susquehanna* and *Schuylkill.* The Constitution of the *United States* was not intended to prohibit the legislature from controlling a fund created for the public interest, and which had been perverted to private purposes by those to whose charge it had been committed.

But, it is said that a grant is a contract; that this is a private corporation, and that the creation of a private corporation by charter, is such a grant as includes the obligation of a contract, which no state legislature can pass a law to impair; and for this we have the authority of the Supreme Court of the *United States,* in the case

(Ehrenzeller *v.* The Union Canal Company.)

of *The Dartmouth College* v. *Woodward*, 4 *Wheat.* 656. Although these, as general positions, are conceded, yet it remains to show their application. The act of assembly did not, it is true, require the consent of the company to the alteration of the charter, yet in point of fact this assent has been given by the stockholders; and I believe no person will be so hardy as to say, that the legislature are prohibited from altering a charter, in its most essential features, if the alteration be agreed to either before or after the passage of the act. The assent of the stockholders relates back to the date of the law, for in no other way could the company entitle themselves to the benefit of its provisions. When the plaintiff performed the duties for which he now claims compensation, he was aware of the consequence of a subsequent assent on the part of the company. I cannot, therefore, perceive that the plaintiff has any right to complain that the president and managers think it their duty to comply with every direction of the law to which the company owes its existence. It would be out of the power of the stockholders to accede to the alteration of the charter in part: they must accept all or none, and the section we are now considering, is among the essential provisions of this act. It violates no contract made with the plaintiffs before the date of the law; for it is worthy of remark, that the secretary was appointed, as is usual, not for a term of time, but that he holds his office during the pleasure of the managers. He was free to perform the services of secretary at his own will and pleasure. He was neither bound to the company in any contract subsisting at the time, nor were they under any obligations to him. It is a singular feature in this cause, that the company do not complain of a violation of the charter: it is the secretary who insists that it is made in opposition to the Constitution.

Judgment affirmed.