[PHILADELPHIA, JANUARY 25, 1830.]

WITMER and others, *against* SCHLATTER, and one hundred and sixty-seven others.

A plea in abatement, alleging that there are others liable with the defendant, does not admit the existence of any contract whatever, the new parties being conditionally named, to enable the defendant to connect them with whatever contract may be proved. It operates no further than to preclude an objection, for want of parties a second time; but the plaintiff is nevertheless bound to prove his case against all who are named, as if there never had been a proceeding to ascertain them.

Against those who pleaded, the record is evidence that all who are alleged to be partners, are so in fact; but all others must be proved to be partners in the ordinary way.

If an individual enter into a contract with a company, doing business under articles of association, one of which provides for an application to the legislature for a charter, which is afterwards granted, the style and general organization of the association continuing the same, the responsibility of the company as partners is not changed by the act of incorporation, unless the express consent of the party who contracted with it be given, notwithstanding the act of incorporation declares that all contracts made by the association shall be as obligatory on the same, and on the other parties thereto, as if they had been made subsequently to the act of incorporation; and that it shall be lawful for the corporation and the parties to maintain actions to enforce the performance thereof, as fully and effectually as if the same had been made by, or with the corporation.

THIS cause having been tried at *Nisi Prius*, a verdict was rendered on the 13th of *February*, 1829, in favour of the plaintiffs, for ten thousand three hundred and twenty-four dollars and forty-two cents, subject to the opinion of the court upon the whole evidence.

The facts, so far as they are material to the elucidation of the points decided, were these: On the 16th of *August*, 1817, *William Schlatter*, *Condy Raguet*, *Benjamin Warner*, *John M. Price* and *Simon Gratz*, who styled themselves the contracting committee of the *Philadelphia* and *Pittsburg* Transporting Company, authorised their agent, *Thomas Harper*, to contract with the plaintiffs, *David Witmer*, *David Witmer, Jun. John Witmer* and *Jacob Witmer*, for the transportation of goods from *Downingstown* to *Harrisburgh*. On the 12th of *December*, 1817, two contracts in writing, between the plaintiffs and *Thomas Harper*, agent for the managers of the *Philadelphia* and *Pittsburg* Transporting Company, were executed, by each of which the plaintiffs bound themselves in the penalty of thirty-five thousand dollars, to provide horses, harness and drivers, and attend to the transportation of goods between *Downingstown* and *Harrisburgh*, making themselves responsible for all damages occasioned by the unfaithfulness, neglect, or want of skill of the persons they might employ. For this they were to receive one hundred and eighty dollars per mile in quarterly payments, on each contract, for a line of wagons going and

(Witmer and others *v.* Schlatter and one hundred and sixty-seven others.)

coming every thirty-eight hours. The contracts were to take effect on the 1st of *April*, 1818, and continue until the 1st of *April*, 1819.

The plaintiffs, after having given in evidence the contracts on which the suit was brought, and testimony to prove performance on their part, gave in evidence the articles of association of the *Philadelphia* and *Pittsburg* Transporting Company, and the book of minutes of the managers, which were produced by the defendants on notice. The articles of association were entered into on the 20th *March*, 1817. The eighth article was in these words:

"*Article* 8. The board of managers shall be a committee to make application to the legislature for a charter of incorporation for this company, and shall, in due time, prepare a plan therefor, to be submitted to a general meeting of the stockholders for their approbation."

By an act of assembly, passed the 19th of *March*, 1818, the company was incorporated, the style, articles of association, and general organization of it continuing the same as before. The second section of the act of incorporation was as follows:—

"*Sect. 2. And be it further enacted by the authority aforesaid*, That all the joint stock, and all the estate, property and effects, real, personal, and mixed, and all the evidences thereof, and vouchers, and other documents whatsoever, belonging to, held, or claimed by the said association at the time of passing this act, shall be, and the same are hereby transferred to, and vested in the corporation hereby created, absolutely and completely to all intents and purposes; and the articles, rules, and regulations heretofore entered into by the said association, and not inconsistent with the provisions of this act, shall, so long as they remain unaltered and unrepealed, be valid and binding on the members thereof; and all contracts whatsoever, made and entered into by, or with the said association, shall be as obligatory upon the same, and upon other parties to the said contracts, to all intents and purposes, as if the same had been made and entered into subsequently to this act of incorporation: And it shall be lawful for the said corporation, and for the parties to any such contracts, to maintain actions at law, and otherwise enforce the due performance thereof, as fully and effectually as if the same had been originally made by, or with the said corporation."

The plaintiffs also offered in evidence the record of a former suit, brought upon the same contracts, by the same plaintiffs, against *William Schlatter, Condy Raguet, Benjamin Warner, John M. Price*, and *Simon Gratz*, and the plea in abatement therein filed, averring, that the promises and undertakings in the declaration mentioned, (if any such were made,) were made jointly with others, whose names were given. The defendants objected to the admission of the record, but the court permitted it to be given in evidence, and, at the request of the defendants' counsel, noted the objection.

(Witmer and others *v.* Schlatter and one hundred and sixty-seven others.)

The defendants gave in evidence letters from the plaintiffs, relating to the contracts, and receipts given by them at different times, viz. on the 1st of *July* and 15th of *October*, 1818, and the 5th of *January*, and 8th of *May*, 1819, for monies paid to them on account of their contracts with the defendants.

*Kittera* and *T. Sergeant*, for the plaintiffs.

1. The admission of the record in evidence was immaterial, as the partnership was fully proved without it; but it ought to have been received. The plea was the declaration and admission of the parties, and evidence against themselves. 4 *Stark.* 1072, 1074. 2 *W. Bl.* 947. 1 *Vin.* 89. *Witmer* v. *Schlatter*, 15 *Serg. & Rawle.* 150.

2. The plaintiffs did not know who composed the company. They contracted with those who stipulated to be responsible; those who were personally engaged. The contract once made, must retain its original character, unless the contrary be expressly agreed. It is not to assume one form or another, as contingencies arise, unless it be inserted in the contract, that it shall be subject to such alterations. The original contract was with the company as individuals, and the act of assembly could not shift the responsibility from the partnership to the corporation, without the assent of the plaintiffs. That assent was never given, so far as appears from the evidence, for it certainly cannot be inferred from the letters and receipts of the plaintiffs. All their acts were in pursuance of the original contract, and with those who were the proper organs of the company, both under the articles of association, and the act of incorporation.

*Binney* and *Chauncey*, for the defendants.

1. The plea was not admissible for any purpose. The parties given by it, are different from the parties to this suit. Only five of the present defendants were parties to the abated suit. The names in the declaration are different from those in the books, so that the case was not made out by the books alone. They were the books of a corporation, and not of a partnership. 1 *Phill. Ev.* 222, (242.) *Sweeting* v. *Turner*, 10 *Johns. Rep.* 216. 1 *Chitty Pl.* 41.

2. The defendants are not liable in any event, the plaintiffs having adopted the corporation in discharge of the association. The original contract was merged, with the assent of the plaintiffs, in the responsibility of the corporation. It was entered into, in the first instance, upon the basis of corporate responsibility, for it is irrational to suppose the plaintiffs did not know every thing relating to the association with whom they were contracting, at least, so far as related to themselves. They were consequently aware, that the eighth article provided for an application to the legislature for a charter. This provision formed part of the contract, and that the plaintiffs considered their agreement as transferred from the asso-

(Witmer and others *v.* Schlatter and one hundred and sixty-seven others.)

ciation to the incorported company, is fully proved by their subsequently corresponding with it, and giving receipts to it as such. They were at least bound to elect between a partnership and a corporate responsibility, and if they intended to hold the defendants as partners, they should have declared that intention.

The opinion of the court was delivered by

GIBSON, C. J.—The nature of this particular plea in abatement, is misapprehended in supposing, that to show the parties, the defendant must necessarily show the contract; and that in a second action, the record is evidence, at least, against all who pleaded, not only of partnership, but of the whole case. The extent of the defendants' allegation is best determined by the nature of the mischief which the plea was devised to remedy. Previous to *Rice* v. *Shute,* 5 *Burr.* 2611, the omission of a joint contractor, was a ground of nonsuit. The defendant folded his arms till the plaintiff made out a case, by proving the contract as laid, when, if the defendant succeeded in showing additional parties, the plaintiff failed on the principle of variance, as he still does where too many are joined; or he failed by proving too much, if he showed a contract with more than were named in the writ. But in no case, was the defendant bound to prove a contract with any one, or any other substantive part of the plaintiff's case. The hardship was, that the plaintiff being ignorant of the proper parties, was foiled as often as a new joint contractor was disclosed; and to remedy it, Lord MANSFIELD did what? Simply required, that objection for want of parties, should be pleaded in a way to prevent a repetition of it, or waived altogether. This, then, being the nature of the mischief, and the extent of the remedy, what change has it produced in the order and effect of the proof? The plea neither asserts nor admits the existence of any contract whatever, the new parties being conditionally named, to enable the defendant to connect them with whatever contract may be proved. The order of proof, therefore, is the same that it was when the matter was tried on *non assumpsit;* and the plaintiff fails to maintain his part of the issue, unless, as formerly, he proves a cause of action in the first instance. The proceeding was not devised to relieve him from the burden of any part of his case, or to give him any other advantage than a certainty of proceeding in a new action, without further objection for the same cause, either from those who pleaded or those who were subsequently joined. A successful plea in abatement, therefore, operates no further than to preclude an objection for want of parties a second time. But giving the plaintiff the benefit of that, he is nevertheless bound to prove his case against all who are named, as if there never had been a proceeding to ascertain them. Against those who pleaded, the record is undoubtedly evidence, that all who were alleged to be partners, are so in fact; but although the fact of partnership may be established by the separate admissions of all, it cannot be by the admissions of less than all, for the

(Witmer and others *v.* Schlatter and one hundred and sixty-seven others.)

plain reason, that a confession is competent to affect none but him who made it. Then, conceding, that the plea in abatement was competent evidence of partnership, as regards some of the defendants, and that, had there been evidence of that fact against all, proof of a contract with the firm, would have been proof of a contract with all; yet, against many of the defendants, not parties to the former action, there was no evidence of partnership whatever; consequently, the verdict is not to be sustained. It is not an argument, to say, that on strict rules of evidence the plaintiff may be baffled for ever. It is an undoubted defect in our judiciary, that it is incompetent to afford facilities for the attainment of justice, which are universally had elsewhere. · As long as the legislature shall withhold the powers of a Court of Chancery, for the discovery of facts and circumstances to found an action at law, so long must the hardship, felt in this particular instance, endure without a remedy. We cannot wrest the law from its purpose, to cure an evil, the remedy for which, is not within our province.

The remaining point is more substantial. I do not understand it to be contended, that the members of the company were not, at first, individually bound. But the articles of association were framed with a view to eventual incorporation; and it is assumed, from this circumstance alone, that the parties treated on the basis of an understanding, that the character of the contract should follow that of the association. There is not a spark of evidence, that the provision for incorporation was known to the plaintiffs; nor, were that otherwise, had they reason to suppose, that in conferring corporate powers, the legislature would meddle with vested rights. It is, indeed, supposed, that he who deals with a company, is bound to know the principles on which it is constituted; in so much, that he *ipso facto,* agrees to contract according to the conditions of the articles. So differently is the law held in actions against joint stock companies, both here and in *England,* that the stipulations in the articles, have never been allowed to exempt the members from liability beyond the joint funds, or to restrain their responsibility to third persons, on the general principles of partnership. It was, indeed, intimated, by Justice PLATT, in *Skinner* v. *Dayton,* 19 *Johns. Rep.* 513, and by one of the judges of this court, in *Hess* v. *Werts,* 4 *Serg. & Rawle,* 361, that partners *may* limit their liability by an explicit stipulation between them and the party with whom they contract, but that such a limitation is never a matter of silent inference. "But stipulations of this kind," says the learned commentator on *American* law, "are looked upon unfavourably, as being contrary to the general policy of the law; and it would require a *direct* previous notice of the intended limitation, to the party dealing with the company, and his *clear* understanding of the terms of the limitation." 3 *Kent's Com.* 5. Without such direct notice, therefore, the question of assent to the articles, is not one of fact, but of law. Then, without any previous assent by the parties to be

(Witmer and others *v.* Schlatter and one hundred and sixty-seven others.)

affected, the legislature has thought proper to declare, that "all contracts whatsoever, made and entered into by, or with the said association, shall be as obligatory on the same, and on the other parties to the said contracts, to all intents and purposes, as if the same had been made and entered into subsequently to this act of incorporation: And, it shall be lawful for the said corporation, and for the parties to any such contracts, to maintain actions at law, and otherwise enforce the due performance thereof, as fully and effectually, as if the same had been made by, or with the said corporation." It might be said, that this does not expressly absolve the members from individual liability, but enables their creditors to sue them or the corporation, at their election. But the legislature, it seems to me, manifestly intended to substitute the responsibility of the corporation exclusively; to do which, without the assent of all parties, it was altogether incompetent. Such a law would be in direct contravention of the provision in the Federal Constitution, which interdicts the impairing of contracts. What evidence is there, then, that the plaintiffs subsequently agreed to release the defendants and accept the corporation as their debtor. They received monies due on the contract, from the treasurer of the corporation, and corresponded with its agents and members, with a view to future engagements. No organic change had, however, been made by the act of incorporation, the officers and their functions being the same, and they received their money from the hand whose business it would have been to pay it under the articles of association; so that, if the mere receipt of money were to prejudice them, they never could have been paid at all. For the rest, it is obvious, that a recognition of the corporation for prospective purposes, is not a retrospective admission of the validity of provisions in the act of incorporation, not at all necessary to corporate existence. To bind the plaintiffs, their assent to this particular provision, whether precedent or subsequent, ought to be direct and unambiguous. We are, therefore, of opinion, that the parties to the contract are personally liable; but for the insufficiency of the evidence of partnership, as to some of the defendants, a new trial is awarded.

HUSTON, J.—The material facts are, that about the 1st of *April*, 1817, a number of persons associated under the name of "The *Philadelphia* and *Pittsburg* Transporting Company." The object was, to increase the facility and despatch of carrying goods between the two places named. On the 1st of *April*, managers were elected, a contracting committee appointed, and soon after an agent. A great number of people subscribed for shares in the company; but whether all subscribed before, or some after the contract with the plaintiffs, was not proved. On the 12th of *December*, 1817, a contract was entered into between the plaintiffs and the agent of the company, in writing, by which the plaintiffs agreed to furnish horses and drivers, and to carry from *Downingstown* to *Harris-*

(Witmer and others *v.* Schlatter and one hundred and sixty-seven others.)

*burgh.* Articles of agreement, stating the objects and plans of the company, were agreed on the 1st of *April*, 1817; and the eighth of those articles stated, distinctly, the intention of the company, to endeavour to procure a charter. We must take it, that those who entered into a contract with the agent of the transporting company, knew who the company were, or, at least, as many of them as satisfied him; and as much of the objects of the company, as was neeessary to make the contract a rational one—they were bound to know so much. By the contract, no labour was to be performed until the 1st of *April*, 1818. On the 19th of *March*, 1818, the company was incorporated, and the name and articles of the company continued the same as before incorporation.

The plaintiffs brought a former suit against the seven managers. The defendants in that suit pleaded in abatement, that the contract, if any was made, was not with the defendants alone, but with them, and one hundred and sixty-seven others, and named the others. Issue was taken on this plea, and a trial, and verdict, and judgment for the defendants. This suit was then commenced, and again a plea in abatement, as to one name, was put in, (see 15 *Serg. & Rawle*, 150,) and overruled.

After the jury was sworn in this cause, the plaintiffs offered in evidence the record of the first suit, containing the plea in abatement, which had in it the names of all, or most of the defendants in this suit; this was objected to, and admitted, and this admission was the first subject of discussion in this court.

A range, wider than necessary to be followed here, was taken in the argument. The plaintiffs insisted, that it was evidence conclusive against all the defendants, or, if not, *prima facie* against all; or, if not, conclusive against those who had pleaded that plea in abatement. The plaintiffs further said, if it was not evidence, yet, as the articles of agreement were afterwards read without objection, and all the names were subscribed to them, the illegality of reading this record against those who were not parties to the first suit, was cured by giving legal evidence afterwards, fully proving the same thing.

The defendants denied, that the record was admissible for any purpose; or that the names at the foot of the articles of agreement were proved or read, or that they made out the case, if read.

The assertion, that a record is not to be read in evidence, except against parties or privies, is too narrow. Some exceptions were admitted, as the record of conviction of the principal, in order to show that an accessory may be tried; judgments *in rem.*, and matters of public right, as tolls and common.

There are many other exceptions in daily use.

1. In making out a title in ejectment, the plaintiff shows a judgment against A., execution and sale to the plaintiff, and gives this in evidence, to prove a title in himself against B., the defendant in ejectment; and yet he, B., was no party to that judgment against A.

·(Witmer and others *v.* Schlatter and one hundred and sixty-seven others.)

2. In cases where a party may sue one of two persons, but not both; after suing one, the plaintiff sues the second, who gives in evidence the first suit, to prove the election.

3. Where he may sue several, but can get but one satisfaction. The plaintiff sues A., and levies his money by execution, and afterwards sues B.; B. may give in evidence the first record, though no party to it, to prove that the plaintiff is already satisfied.

4. In ejectment, a defendant may give in evidence a title in a third person; but it must be a valid, subsisting title, not one abandoned, or barred by the act of limitations. After giving such title in evidence, he may give in evidence an ejectment verdict and judgment in favour of the owner of that title, not to prove, that it is a good title, but that it is not abandoned by the owner, or barred by the act of limitations.

5. So, a verdict and judgment against a master, is evidence in a suit by him against his servant, who committed the trespass, but not conclusive. So, a verdict and judgment of eviction, by a person warranted against his warrantor, which may be conclusive if notice has been given to the warrantor, or not conclusive, if there has been no notice; still, it is evidence to prove the fact of eviction. In short, where the verdict and judgment are on the same matter, and are pleaded or offered in evidence, as conclusive in the suit trying, the record is not admissible, unless between the same parties, or those in privity with them. But where a fact forms part of the proof of a claim, or of a defence, and that fact can be proved by the record of a suit, it may be so proved, as in the cases put above, and in some others. So, when a plea in abatement was pleaded, in the cause now trying, the record of the former suit was evidence to prove the fact, that a plea in abatement had been pleaded once before to the same demand, against some of the present defendants.

I think it was evidence of a solemn admission by those who pleaded that plea in abatement, that they formed a part of those now sued, who made the contract declared on, if such a contract was made. The plaintiffs are not bound to prove all the defendants to be contractors, by one witness or one kind of proof; and I think this was admissible as respected those who pleaded it, and no further.

As to whether the same thing was proved by the articles of agreement, I think there was a misunderstanding at the bar, and perhaps on the bench, in consequence of it; both parties supposing the case as against all the defendants, proved by the record of the first suit. When the articles were offered to be read, the defendants did not object to the reading of them, unless the signatures were proved. Being then read, and no objection made, the judge considered the whole, including the signatures, admitted. I say, I suppose this was the case. The same mistake will not occur at another trial. Whether the articles, when all the signatures are proved, will support the plaintiffs' case, I cannot now say.

There were other grounds of defence discussed, of serious im-

(Witmer and others *v.* Schlatter and one hundred and sixty-seven others.)

portance. The contract certainly was made before the incorporation: whether with them as a company or firm, having partnership property, or as this company was composed, generally by one member of another mercantile or manufacturing firm, signing the name of his firm; whether any of the firm was bound except him who signed, unless something more was done, was not discussed; but at the time the contract was made, an act of incorporation was contemplated. I have said, the plaintiffs are bound to know something respecting a company with whom they contracted. A company enter into articles and appoint an agent; they propose to do a certain business in a certain way: he who contracts with their agent shall not shut his eyes and say that he did not know any thing of them or their plans or designs. In point of fact, no man ever does enter into such a contract as the present without full inquiries and minute information. I would then take it, the intention to procure an act of incorporation, and the fact that one had been procured, was either to be taken by us as known to the plaintiffs before they did the work; or if not so, is a fact to be submitted to a jury who may try the cause again. All the labour was performed for the corporation, none of it for the company, before the act of incorporation.

If we say, the fact that they intended to become incorporated was known to the plaintiffs when they contracted, or that it was known to the plaintiffs before they performed the labour, that the company was incorporated, and the labour, with such knowledge, was performed, not for the individuals, but for the corporation, in my opinion, the individuals are not liable. I use the word, company, in relation to the situation of the parties, before the act of incorporation, and the word, corporation, I apply to them afterwards. Though the contract was with the company, no work was performed for the company. On what principle, then, can they be sued for the services performed not for them, but for others. In point of fact, as well as of law, the company and corporation were composed of different persons. After the act of incorporation, the shares of those who neglected, or refused to pay, were forfeited. If the plan had succeeded, were they bound to pay, though they could not receive? It is true, a man may bind himself to pay for work to be performed for another; but this must distinctly appear, or he is not bound. A man may contract with a mechanic to build a house on a lot, at some future time; before that time he sells the lot. The mechanic knows this; the purchaser furnishes the materials, and makes payment to the mechanic. Can he, if the purchaser fails, go back and recover from the first contractor, who got no benefit? Would it not be left to a jury to say whether the contract with him who sold was at an end, and a new one made, express or implied, with the present owner of the lot, and if they found such new contract either express or implied, would any tribunal permit the mechanic to renounce that, and recover from one who got no benefit?

(Witmer and others *v.* Schlatter and one hundred and sixty-seven others.)

I have said this much independent of the act of incorporation, which enacts as follows:

[His Honour here read the second section of the act.]

I do not say, if a contract had been made by the company, and executed by the contractor for the company, before the incorporation, that this act would release the individuals, or that it would not. This is not that case. But I do say, that where a contract is executory, and not yet commenced, an act of assembly may render it unlawful to perform it in any way; or it may direct, that if performed, it shall be in a way different from that agreed on. Both these have been done in acts relating to banks, and rightly done. Again, if the legislature can change the property of a company, or can take it from the individuals, and vest it in the corporation, can it not transfer the contracts relating to that property, and the liability on those contracts, and place them on the same body who have become owners of the property, and who will have the benefit of the contract? Can it take away the property, and take away all benefit from contracts *to be performed,* and leave those liable who have not the property, and do not derive benefit from the performance of the contracts? Those who say the last is *constitutional,* and the first not, must have strange notions of the meaning of that word.

If a consignee of goods engages a carrier to bring them to him, he is liable for the price of carriage; but if the vendor follows the carrier, and stops the goods *in transitu,* and receives them from the carrier, he, and not the consignee, must pay the carrier. This, by common law, which is common sense and justice. An act of assembly, directing the same thing, would, by some people, be called unconstitutional. I shall not, for I do not pretend that I can, pretend to draw any precise line, distinguishing, in all cases, what is, or is not constitutional. This, however, may be said, that a law which produces no injustice—which does not destroy a vested right, but only modifies the effect of and remedy on a contract, is not unconstitutional.

The plaintiffs had their option to proceed and perform this contract, after the law, for the corporation, and look to them for compensation, or to decline the contract, and sue the company for damages for disappointment; but are forbidden by the law, and by common justice, to take this course. They cannot have recourse to the company, for they did not labour for them, and must claim under the corporation, for they did labour for them, and if so, cannot demand pay from the company.

Let me not be understood as giving a final opinion in this matter; as it comes before us now, this court are to decide facts and law. As it will probably be tried next time, the jury ought to find whether the plaintiffs had knowledge of the act of incorporation, and if they believe there was notice of it before the labour was performed, then, in my opinion, the law will be as above stated.

(Witmer and others *v.* Schlatter and one hundred and sixty-seven others.)

We have so many banks and other corporations, who began as companies, and were afterwards incorporated, and so many corporations whose charters have been, and are daily changing, that the effect of the clause in question is very important. I have thought of it, and I see no objection to allowing the power of the legislature, and the effect of the act of incorporation, so far as respects all contracts, to be entirely carried into effect for the benefit of the corporation. If the party performs for the corporation, the corporation is liable, and is alone liable. If the party is not willing to perform and look to the corporation, let him at once stop. I think that principle is the foundation of our decision in *Ehrenzeller* v. *The Union Canal Company,* 1 *Rawle,* 181; and that case goes farther than my opinion in this. In that case an indefinite employment was at once put an end to by the act of incorporation.

Rogers, J., was against the new trial on both points. Smith, J., concurred with the Chief Justice. Tod, J., took no part, having been indisposed at the argument.

New trial awarded.