United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 3, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED S
TATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 02-10982
Summary Calendar

PARADIGM MEDIA GROUP, doing business as RLF
Billboard Development LLC

Plaintiff - Appellant,

versus

CITY OF IRVING,

Defendant - Appellee.

Appeal from the United States District Court
for the Northern District of Texas
(3-01CV0612-R)

Before HIGGINBOTHAM, SMITH, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

The issue presented is whether a city's commercial billboard ban, which provides exceptions for,

among other things, advertising structures on the same site as large sports facilities, violates the First

Amendment. We agree with the district court that it does not.

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

# I. FACTS AND PROCEEDINGS[1]

The city of Irving, Texas adopted a comprehensive ordinance in November 2000, regulating the dimensions, placement and prohibitions relating to signs and billboards. 1 R. 183-218. The stated purpose was to prevent "visual clutter" and "traffic hazards." 1 R. 183. Billboards installed after June 3, 1999 are banned. 1 R. 204. The definition of "billboard" only covers signs "which advertise[] a use, product or service *not* found on the premises on which the sign is located." 1 R. 184 (emphasis added).

As a general rule, the ordinance requires that all signs pertain to services or products located on the premises. 1 R. 189. Non-commercial signs are exempted from the "on-site" rule. *Id*. Pre-existing nonconforming signs are exempted, but are subject to certain regulations and amortization provisions. 1 R. 204-206. There is a narrow exception for new advertising structures on the premises of a "sports facility". 1 R. 214. The facility must, among other requirements, obtain approval by city council resolution before constructing a new advertising structure. 1 R. 214-15. The definition of "sports facility" covers only facilities with a seating capacity of 5,000 or more, which, at present, includes only Texas Stadium and Irving Stadium. 2 R. 447. There are three advertising structures at Texas Stadium, and none at Irving Stadium. *Id*.

The city of Irving owns the land where Texas Stadium is located and, by the terms of its lease to the Texas Stadium Corporation ("TSC"), stands to benefit from advertising revenue on the advertising structures. 2 R. 468-69.

Paradigm Media Group ("Paradigm") filed 42 billboard permit applications in February 2001, and

---

[1]The district court opinion presents the facts in more detail. *See Paradigm Media Group, Inc. v. City of Irving*, No. 3:01-CV-612-R, 2002 WL 1776922, at *1-*4 (N.D. Tex. July 30, 2002).

the city rejected them all under the ordinance provision prohibiting new billboards. 1 R. 9. The next month, Paradigm filed a lawsuit seeking a declaration that the ordinance was unconstitutional, and seeking damages under 42 U.S.C. § 1983. 1 R. 1. On cross-motions for summary judgment, the district court granted the city summary judgment. *See Paradigm Media Group, Inc. v. City of Irving*, No. 3:01-CV-612-R, 2002 WL 1776922 (N.D. Tex. July 30, 2002). We affirm.

## II. STANDARD OF REVIEW

We review the district court's grant of summary judgment *de novo*, applying the same standard as the district court. *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 401 (5th Cir. 2001). Summary judgment may be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A genuine issue of material fact exists if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party. *Geoscan, Inc. of Texas v. Geotrace Techs., Inc.*, 226 F.3d 387, 390 (5th Cir. 2000).

All of the evidence introduced and all of the factual inferences from the evidence are viewed in a light most favorable to the party opposing the motion. *See Boston Old Colony Ins. v. Tiner Assocs. Inc.*, 288 F.3d 222, 227 (5th Cir. 2002). Questions of law are reviewed *de novo*. *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 877-78 (5th Cir. 2002).

## III. DISCUSSION

"Each method of communicating ideas is a 'law unto itself' and that law must reflect the 'differing natures, values, abuses and dangers' of each method. We deal here with the law of billboards." *Metromedia, Inc v. City of San Diego*, 453 U.S. 490, 501 (1981) (footnote omitted). The district court relied largely on *Metromedia*, and its application of the commercial speech framework of *Central Hudson Gas v. Public Service Commission of New York*, 447 U.S. 557 (1980), and we agree with its conclusion and analysis. In a footnote, the district court specifically rejected Paradigm's argument that Irving "allegedly discriminated as to the identity of the speaker and by the content of the speech by allowing an exemption for advertising structures at sports facilities." *See Paradigm*, 2002 WL 1776922, at *7 n.9. Paradigm presses only this "speaker discrimination" argument on appeal, and we likewise reject it.[2]

Paradigm argues that, as a practical matter, TSC is the only speaker (1) exempted from the ban on "off-site" advertising,[3] and (2) exempted from the ban on constructing new billboards. It cites *Greater New Orleans Broadcasting v. United States*, 527 U.S. 195 (1999), for the proposition that, in the commercial speech context, discrimination based upon the speaker's identity violates the First Amendment. It should be noted, however, that this ordinance does not discriminate, at least on its

---

[2]Although Irving has apparently repealed the sports facility exception, "[t]he recognized rule is that 'voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i. e., does not make the case moot.'" *Hall v. Board of School Comm'rs*, 656 F.2d 999, 1000 (5th Cir. Sep. 1981) (quoting *United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953)).

[3]Because "advertising structures" are treated in a separate section of the ordinance, Paradigm assumes that the generally applicable "on-site" requirement of the ordinance would not apply to those structures. Thus, for example, the advertising structure could host an advertisement for Southwest Airlines. Irving does not challenge this construction of the ordinance, but we note that this construction is not obvious.

face, based on the identity of the speaker because the relevant provisions apply to all sports facilities. The exemptions about which Paradigm complains apply equally to Irving Stadium, and would apply to a newly-constructed sports facility.

In *Greater New Orleans*, the Supreme Court invalidated a federal law banning private casino broadcast advertisements because the law was "so pierced by exemptions and inconsistencies," *id*. at 190, that the speech restriction failed to "materially advance[] the asserted governmental interest" of discouraging gambling. *Id.* at 188. *Greater New Orleans* evaluated the law under the four-part framework from *Central Hudson,* and just as in *Greater New Orleans*, the focus of this case is on the third *Central Hudson* factor: whether the exception "materially advances the asserted governmental interest." 527 U.S. at 188.

The regulatory regime in *Greater New Orleans*, on its face, drew distinctions between the identity of speakers. The law prohibited private casinos from broadcast advertising, while permitting broadcast advertising by, for example, tribal casinos and state-run casinos. *Id*. at 190. By "pegging its speech ban to the identity of the owners or operators of the advertised casinos," *id*. at 191, the government failed to demonstrate "why such lines bear any meaningful relationship to the particular interest asserted: minimizing casino gambling and its social costs by way of a (partial) broadcast ban." *Id*. at 193. In this respect, the law "was neither a rough approximation of efficacy, nor a reasonable accommodation of competing state and private interests." *Id*. at 194-95.

Here, by contrast, the ordinance makes distinctions relating only to land use characteristics. For example, the ordinance makes distinctions between on-site and off-site advertisements and between new and preexisting signs. The distinction troubling Paradigm—the sports facility exception—is, at least on its face, also a land-use distinction. Even assuming that the effect is to benefit only TSC, the

5

narrow distinction *only applies to the sports facility sites*, and, as such, is not so pervasive as to seriously undermine the stated purpose, as was the case in *Greater New Orleans*.[4]

> [T]he elimination of all visual blight is not the constitutional prerequisite to an ordinance regulating a type of signage. The case law makes clear that a city is not precluded from curing only some of its visual blight, *see, e.g.,* [*Members of City Council v. Taxpayers for*] *Vincent*, 466 U.S. [810, 811 (1984)] ("Even if some visual blight remains, a partial, content-neutral ban may nevertheless enhance the City's appearance."), or from pursuing the elimination of visual blight in a piecemeal fashion. *See, e.g., Metromedia*, 453 U.S. at 531-32, 101 S. Ct. at 2904-2905 (Brennan, J., concurring in the judgment).

*Lindsay v. San Antonio*, 821 F.2d 1103, 1109 (5th Cir. 1987). Thus, even if eliminating the sports facility exception would further the aesthetic and safety interests of Irving, that fact would not render the ordinance unconstitutional.

Paradigm also casts the sports facility exception as an impermissible content-based regulation . The ordinance defines "advertising structure" to mean on-site structures "for the purpose of advertising the facility *as well as any product, business or service*." 1 R. 184 (emphasis added). Paradigm reads this definition to require any advertising structure to advertise the facility itself, at least in part. Assuming this interpretation is accurate (which is far from obvious), Paradigm's argument in unpersuasive. A requirement that a facility advertise itself is not a regulation of content *as such*; it is a land use classification. Moreover, just such an "on-site" rule was specifically endorsed by the Supreme Court in *Metromedia. See* 453 U.S. at 503-512.[5]

---

[4] In fact, Irving asserts a reasonable explanation for the exception. Considering the otherwise-present visual clutter of and surrounding existing sports facilities, the aesthetic and safety objectives behind a billboard ban would not be materially advanced by extending it to sports facilities. Texas Stadium, for instance, is located at the confluence of three major freeways and already has three large advertising structures at the site.

[5] Although only four justices joined the plurality opinion in *Metromedia*, a fifth justice (Justice Stevens) joined the portion of the plurality relevant to this case. 453 U.S. at 541.

## IV. CONCLUSION

For the stated reasons, we AFFIRM.