## M'Clelland *against* Lindsay.

If testimony be offered by one party, the other may require the purpose for which it is offered to be stated; if this be not done, and the evidence be admitted generally, it is not error, if it was competent for any purpose.

In an action against three partners, in which the writ was served upon one only, upon the trial of which a question of fact arose as to who were the members of the firm, the record of a former action against the defendant served with process alone in which he pleaded in abatement the non-joinder of the present defendants, is competent evidence.

ERROR to the Common Pleas of *Adams* county.

Ann Lindsay, administratrix of Thomas Lindsay, deceased, against William M'Clelland, Jas. Reeside, and Samuel R. Slaymaker.

The facts of this case, which involved any principle, are sufficiently stated in the opinion of the court.

*Cooper*, for plaintiff in error.
*Stevens*, for defendant in error.

The opinion of the Court was delivered by

HUSTON, J.—The defendant here was plaintiff below, and brought suit against M'Clelland, Reeside, and Slaymaker. The writ was served on M'Clelland, and *non est inventus* as to each of the others. The appearance and pleas were by M'Clelland alone.

Plaintiff's statement claimed $740 for keeping two teams of stage-horses, and boarding the drivers, and furnishing stables, feed, &c., during the years 1834, '5, from the 1st of October in the first year, to last of December in the second year.

The plaintiff below proved that the horses and drivers were kept by Lindsay. There seems to have been no dispute as to this, or to the amount claimed. But there was some intricacy as to certain alleged complication of partnerships. It seemed to be undisputed that at one time Beltzhoover, Reeside, Slaymaker, and

[M'Clelland v. Lindsay.]

Lindsay were connected in a line of stages from Baltimore to Chambersburg; but though all connected, yet it was in such way that Beltzhoover found and supported the stages, horses, and drivers from Baltimore to the line of the state of Maryland, and he received the proportion of fare from passengers, and of pay for carrying the mail for that distance. And the other three, in some way, owned the carriages and horses which ran from Maryland line to Chambersburg. It is common that each party owns certain stages and horses, which run over a given distance; and though several partners form but one company, yet, among themselves, each draws pay according to the distance over which his own stages travel. On the 27th of September 1833, Thomas Lindsay sold one-third part of six teams and stages to William M'Clelland for $2000. The company from the Maryland line then became James Reeside, S. R. Slaymaker, and William M'Clelland; so far all was clear and intelligible, and so, as plaintiff alleged, and as some witnesses proved, this continued until the 1st of January 1836.

But it appeared, that in 1834 a line of stages ran from Columbia to Chambersburg: this line was called the Good Intent line; and Thomas Lindsay was a partner in it. At Gettysburg this line came on to, and ran on the same road with the Baltimore line from Gettysburg to Chambersburg. Of this Good Intent line Thomas Lindsay was a partner; and it was alleged that the owners of the Good Intent line, (which continued to Pittsburg) which consisted of twelve or fifteen persons, were also originally, or in 1834 became, owners of that part of the Baltimore line which was in the name of Reeside and Slaymaker; and further, that the Good Intent line, and the Baltimore line, were owned in fact by the same persons, or, at least, that they were partners if not united into one company, and that T. Lindsay being a member of the Good Intent line, was thereby a partner with M'Clelland, and that this suit could not be supported. Plaintiff denied any connexion between the two companies, except that they occasionally carried passengers for each other between Gettysburg and Chambersburg.

And further, to support this, they showed the record of a suit by this same plaintiff, against William M'Clelland alone, for the same sum, for keeping two teams for same time; to which suit William M'Clelland pleaded in abatement, &c., that James Reeside and S. R. Slaymaker were jointly bound with him, &c., and this was verified by his affidavit.

Plaintiff at first replied to this plea in abatement negativing the fact, but, on further consideration, discontinued that suit, and instituted the present action against William M'Clelland, James Reeside, and S. R. Slaymaker. The defendant excepted to the admission of the record of the former suit. It is not stated for what purpose this record was offered. When testimony is offered

I. — 46   2 F

by a plaintiff, the defendant may ask for what purpose it is offered; if he does not ask this, but objects to it generally, the general rule seems to be, that if the evidence offered is relevant and competent for any purpose, it is not error to admit it.   Now in this case, when M'Clelland was sued in the former action, he stated, and filed his affidavit, that Reeside and S. R. Slaymaker were his partners.   In this suit he is sued jointly with them, but as the writ was served on, and the appearance entered for him alone, the plaintiff could, *as against him,* give the former record in evidence, to prove he was jointly liable with the other defendants named in the writ.   If Reeside and Slaymaker, or either of them, had lived in the county, and the writ had been served on them, the affidavit of M'Clelland would not have been evidence against them, to prove that they were partners; as against M'Clelland *it* was evidence.   There was then no error under these circumstances in admitting it.   In this court it was further discussed, whether it did not preclude M'Clelland from proving that any others than Reeside and S. R. Slaymaker were his partners.   And it would seem, from the case in 2 *Rawle* 359, it did preclude him from a second plea in abatement naming other partners, and from producing the same effect of putting the plaintiff out of court, by proving he had other partners.   But the defendant put it on another ground; he attempted to prove that the plaintiff was a partner with the defendant, by introducing evidence to show a partnership between the Good Intent line (of which one witness said Lindsay admitted himself a partner) and the Baltimore line.   Witnesses were examined on both sides as to this matter.   George M'Clelland, a brother of defendant, was called four times.   The first time he proved that Lindsay told him the Good Intent line had bought the interest of Slaymaker and Reeside in the Baltimore line.   Both these lines seem to have come to the end of a contract at the close of the year 1835, at which time the stock of each company was appraised.   At the second time he proved that he was one of the persons who at that time appraised the stock of both companies; that Lindsay, S. R. Slaymaker, Z. Durkee, and James A. Thompson were along; did not hear them say to whom the stock belonged: Lindsay complained of both companies as owing him; that Wm. M'Clelland took the whole stock of the Baltimore line at that appraisement.

The third time he proved that Z. Durkee proposed to William M'Clelland, that he might take the Baltimore stock at the appraised value, and that M'Clelland took it; that witness did not know that Z. Durkee had any interest in that line, except as a member of the Pioneer line.   All this was admitted, though all objected to on the ground that none of them went directly to prove that there was any partnership between the two lines.   The plaintiff had called William P. Thompson, who, I take it, was the book-keeper of both lines at Chambersburg, and who swore positively

[M'Clelland v. Lindsay.]

that he was present at the settlement of both lines; that Reeside, as a member of the Baltimore line, and the contractor for carrying the mail, received the money, but distributed it among the members of that company; that on the settlement of the Good Intent line, no money received by the Baltimore line was taken into the account, neither mail money, nor other moneys; nor were the expenses of that company taken into the account; that there was a settlement between the two companies, but only for moneys received, as I understand it, in this way—a passenger entered at Baltimore for Pittsburg, and paid that company for all the distance, though in fact he would be carried from Chambersburg to Pittsburg by the Good Intent line; and the Baltimore line received money, part of which would belong to the other company: and again, a passenger entered at Pittsburg for Baltimore, and paid the Good Intent line for the whole distance to Baltimore, though in fact he would be carried by the Baltimore line from Chambersburg to Baltimore. This was something like positive proof that no partnership existed between the two companies. The defendants then called a witness, who proved that he heard Lindsay say that Jesse Tomlinson was a partner in the Good Intent; and G. M'Clelland was again called, and offered to prove that S. R. Slaymaker and Jesse Tomlinson offered him a horse, belonging to the Baltimore line, as pay for his services as appraiser. This was rejected by the court, and I cannot say this was error. S. R. Slaymaker was a part owner of the Baltimore line, and might sell or give away one of the horses; and Mr Tomlinson being present did not alter this power. Besides it was not stated whether for his services in appraising one or both lines; and the one company might offer a horse, and charge the other with half the value, as I suppose the price to each appraiser was not a horse from each company. In short, it was only evidence having any bearing in this case, on the supposition that, because each company employed the same man to appraise its own horses, when both lines ran on the same road, it was not possible to offer a man pay for appraising both, unless the companies were in partnership.

The last testimony offered by the plaintiff, was that of two men, one living in Gettysburg, and one in Chambersburg, each of whom was a partner in the Pioneer line, to prove there was no partnership between the lines. These were objected to, admitted, and an exception taken. If a witness is offered, he is heard, unless interested. What interest had these men? they were not liable to costs; the verdict was not asked against them. But suppose we look to costs of future suits; if the plaintiff lost this suit, he must sue all the partners, and recover the costs of that suit, unless there can be no recovery by the plaintiff.

If plaintiff recovers here, and defendants can be proved by M'Clelland to be his partners, he will recover their proportion of

[M'Clelland v. Lindsay.]

the judgment and costs. If they were defendant's partners, their interest was against the plaintiff, and there might have been reason for his objecting to them; if they were not partners, they could legally be examined. If these witnesses were partners of M'Clelland, it was their interest to say so when called; for, according to the views of M'Clelland's counsel, and of the court also, if this were proved, plaintiff was turned out of court; and the witnesses were clear of the costs of this suit, and of the debt too, at least for a time.

But the court admitted the witnesses, and each of them proved that he was a member of the Good Intent company, up to the 1st of January 1836; that the Good Intent company never purchased or paid for any part in the Baltimore line; that it received no part of the profits, nor paid any part of the expenses of that line; and never had any interest in the running between the two lines, except to carry passengers, entered by each other, as stated by a former witness.

All we know of the charge of the court is, "if the Good Intent Company possessed an interest in the Baltimore and Chambersburg line, Lindsay being a member of the Good Intent Company, the plaintiff could not recover; the action should be account render." It would seem the court entirely overlooked the Act of 14th of April 1838, (*Pamphlet Laws* 457, and *Stroud's Digest* 841), changing the law, so as to allow suits to proceed, although the plaintiff was one of the partners who were defendants. And I am not sure that an action of account render was ever necessary in a case like this. Suppose Lindsay had sold a horse to the Good Intent Company, of which he was a member, or had furnished hay and oats to the company to be paid for quarterly; and the company were to continue four years; could not he, before the late law, have recovered the price of his horse or provender, until a final dissolution and settlement of the accounts? His pay would be due him, whether the company gained or lost money, and was in no respect like his share in the funds of the company. But since that law, there is no doubt he or his administratrix could recover; and this also puts an end to all objection to the competence of the witnesses; they were called by Lindsay, and could testify for him, although they had been his partners; though, perhaps, not against him. The jury found for the plaintiff, and the defendant was not injured by the decisions of the court.

Judgment affirmed.