## King *et al. versus* Faber & Co.

1. A number of execution-attachments were served the same day; on the trial of one of them against the garnishees, the plaintiff in one of the others is a competent witness for the plaintiff.

2. A verdict and judgment in favour of a garnishee in one attachment is no bar to another by a different creditor.

3. Where there is an offer of evidence and the opposite party does not require the specific purpose for which it is offered to be stated, if the evidence is competent for any purpose, it is admissible.

4. A witness having stated his judgment of the aggregate value of property, it was allowable for him to read to the jury the list of items from which he made up his opinion.

5. An execution-creditor of the defendants in the attachment, before the attachment, had levied on goods in the possession of the garnishees as the property of the defendants; under a sheriff's interpleader, it was decided that the goods were the garnishees': *Held*, that the record in that case was not evidence for the garnishees in the attachment, although the same goods were attached.

6. The jury having agreed upon their verdict and sealed it up, one of their number was taken sick before it was rendered; the counsel for the garnishees declined to have the verdict rendered by eleven jurors; the court adjourned to the sick juror's house, and, in the presence of the parties and their counsel, took the verdict of the whole. *Held*, that this was not error.

ERROR to the District Court of *Allegheny county*, where this was an execution-attachment by F. and W. M. Faber & Co. against Adams, Macklin & Co., in which Alexander King and Michael McCullough were garnishees.

The plaintiffs had obtained judgment against the defendants March 14th 1859, and the attachment was served September 23d 1862. The garnishees pleaded *nulla bona*.

There were nine other attachments issued and served at the same time with this.

The defendants manufactured and sold glassware on Ross street, in Pittsburgh, having a lease of the premises where they conducted their business. They were largely indebted to a number of creditors, amongst others to King and McCullough, on distinct debts; they had not been connected with each other in business.

Being unable to meet their liabilities, on the 15th of October 1857 they confessed a judgment to King for $2000, and to McCullough for $2000. Executions were issued on both the next day, going into the sheriff's hands at the same time. The entire property of the defendants was sold under these executions on the 22d of October to King and McCullough for $2025.78. King and McCullough continued the business at the same place in the name of "Adams, Macklin & Co., Agents."

The establishment was afterwards removed to Birmingham, and the lease on Ross street, which had been extended, was sold by the garnishee.

The creditors of the defendants alleged that at the time the judgments were confessed, the understanding was that King and

[King *v.* Faber.]

McCullough should buy the property of the defendants, and after satisfying their own claims should deliver it to the defendants; that at the sale other creditors refrained from bidding, understanding this to be the arrangement; that in consequence, the property sold very much below its value; that the amount of the judgments confessed covered all the liabilities of the defendants to King and McCullough, and that they had been fully paid.

King and McCullough denied these allegations, and asserted that there was no such arrangement; that they bought for themselves; that the defendants were indebted to them much beyond the amount of the judgments. There was evidence on both classes of allegations.

On the trial all the other attachments were given in evidence.

When the jury were retiring they were directed by the court, if they should not agree on their verdict so as to bring it in that evening, that they should seal it up and bring it into court in the morning. In the morning eleven jurors only were present with a sealed verdict, and the foreman informed the court that the twelfth juror was sick. The court asked the counsel of the parties, if they would consent that the eleven jurors should render the verdict, which was assented to by the plaintiff's counsel, but declined by the garnishees. The court, having, on further inquiry and by certificate of a physician, ascertained that the juror could not leave his room for some days, and the garnishees' counsel still declining to assent to the eleven jurors rendering the verdict, adjourned to meet forthwith at the house of the sick juror, and all, the jurors, the plaintiffs and garnishees, with their counsel, being present, opened the court, the jury regularly rendered their verdict, being polled by garnishees' counsel, the court then directed it to be recorded, and adjourned to meet forthwith at the court-house, when the verdict was publicly announced by the clerk in the presence of the eleven jurors, the parties and their counsel.

The jury found for the plaintiff, and that there was in the hands of the garnishees liable to attachment, $16,200.

There were a number of exceptions taken by the garnishees to the rulings of the court (Williams, A. J.), which appear by the assignment of errors.

The court erred:—

1. In admitting John Best as a witness, he being one of the attaching-creditors.

2. In allowing witness to testify, "that he attended the sheriff's sale of Adams, Macklin & Co., at the suit of the defendants, for the purpose of bidding on the property of Adams, Macklin & Co., advertised for sale, and that King and McCullough, and Adams, Macklin & Co., were there, and that he was willing to pay $5000 for the leasehold, but was informed by the parties that the pro-

[King v. Faber.]

perty was being bid in for the benefit of Adams, Macklin & Co., and that he was thus prevented from bidding.

3. In allowing Jenkin Jones, a witness, to read to the jury a bill of items of the valuation of the articles sold at sheriff's sale. The witness had stated on his examination in chief, that in his judgment the property was worth $20,000; and on cross-examination, that he had a bill of items showing the value of the articles.

4. In allowing Thomas Atterbury to prove, that the judgments of King and McCullough were fully paid in 1859—not being the best evidence; and,

5. To prove the value of the buildings in 1859 after the sheriff's sale.

6 and 7. In allowing Swartz, a witness, to testify, that B. A. Fahnestock & Co. had attached goods of Adams, Macklin & Co., in Baltimore, after the sheriff's sale; and that McCullough offered to pay them fifty cents on the dollar to withdraw the attachment.

8. In not allowing the garnishees to give in evidence the record of an issue under the Sheriff's Interpleader Act, between King and McCullough and Orrin Newton, to try whether the property now in dispute, which had been levied on under an execution of Newton against Adams, Macklin & Co., belonged to King and McCullough: the verdict and judgment in that case having been in favour of King and McCullough.

9. In refusing to strike out the evidence of Best and Owens, attaching-creditors of Adams, Macklin & Co., whose attachments were served at the same time with the attachment in this case.

10. In affirming the plaintiff's first point, "that if the jury believe, from the evidence, that the judgments given to the garnishees in this case were given by Adams, Macklin & Co. on the understanding and agreement that the property was to be bought by King and McCullough, at the sheriff's sale, and that when the said judgments were paid to the said King and McCullough, the property was to become that of said Adams, Macklin & Co.; and if the said judgments were paid in the year 1859, then the property became that of Adams, Macklin & Co., and the verdict should be for the plaintiffs."

11. In affirming plaintiffs' second point: "If the jury believe from the evidence, that bidders at the sheriff's sale were prevented from bidding, by collusion between Adams, Macklin & Co. and King and McCullough, and by this means King and McCullough became the owners of all the property of Adams, Macklin & Co., then the property did not pass, and is bound by the execution-attachment in this case."

12. In their answer to garnishees' first point: viz., "That there is no such clear and convincing testimony in this case, of a contract, as will justify the jury in finding that there was one, and

[King *v.* Faber.]

thereby divesting the legal title of King and McCullough to the property in question." "The court decline to charge as matter of law, as requested on this point, and submit the question as matter of fact to the jury."

13. In their answer to garnishees' second point: viz., "If the plaintiffs go on the ground of a contract, such as they allege, they must prove that the debts of Alexander King and Michael McCullough, due at the time the judgments were given, have been paid; and that they have been relieved from the liabilities which they were under at that time for Adams, Macklin & Co.; and they must also prove that the debts and liabilities contracted by King and McCullough, since the sheriff's sale, have been satisfied, otherwise they cannot recover. They cannot take the property from King and McCullough, and leave them exposed to the debts and liabilities of the concern. And there is no testimony in this case that will justify the jury in finding that the said debts and liabilities have been satisfied." "The first part of this point is affirmed. The last part, viz., the concluding sentence, is declined, and submitted to the jury as a question of fact."

14. In their answer to garnishees' third point: viz., "There is no testimony in this case that will justify the jury in finding that the sheriff's sale was fraudulent, as against the creditors of Adams, Macklin & Co." "The court decline to charge, as matter of law, as requested in this point, but submit the question to the jury."

15. In their answer to garnishees' fourth point: viz., "the sheriff's sale vested in King and McCullough a good, legal title to the property in question; and nothing but clear, precise and indubitable evidence will authorize a court and jury to divest them of it, either on the ground of fraud or contract. There is no such evidence in this case, as would induce a chancellor to divest them of it, and consequently none that the court can leave to the jury." "The court decline to charge as requested in this point, as matter of law."

16. The court erred in their proceeding in taking the verdict of the jury.

*Woods, Hampton* and *McConnell*, for plaintiffs in error.—Best and Owens, as attaching creditors, would be entitled to a *pro rata* share of the goods in the hands of the garnishees liable to attachment: Long's Appeal, 1 Harris 297. They were therefore interested to prove both that the garnishees had funds liable to the attachment, and to increase their amount. If there was any evidence for the jury on the question of fraud in the sheriff's sale, it was only in Best and Owens's testimony.

The testimony of Best was not that he heard from King or

[King v. Faber.]

McCullough that the property was to be bid in for Adams & Co., but from the *parties*.

The list read by Jones was made out by him from memory long after the sale; it was the same as if the paper itself had been permitted to go to the jury.

It was not proper to admit a witness to prove that King and McCullough's judgments were paid, when he had no knowledge but that derived from examining the books of Adams, Macklin & Co. The value of the building two years after the sheriff's sale was not evidence to prove fraud in the sale.

The offer of McCullough to pay Fahnestock & Co. fifty cents in the dollar, to withdraw their attachment from the goods of Adams, Macklin & Co., in Baltimore, was but an offer of compromise, and therefore inadmissible. The plaintiffs in this case and in Newton's feigned issue both claimed under Adams, Macklin & Co., and tried to prove a contract on the part of King and McCullough to buy in the property for the benefit of the creditors; both parties were endeavouring to enforce a right of Adams, Macklin & Co. Therefore the question being the same, the parties practically the same, and the judgment being a decision that there was no such contract, it is a bar to this suit.

The testimony will show that there was no evidence of fraud or of the contract. Yet these questions were submitted to the jury. If property is to depend upon the caprice of juries, acting on verbal evidence, and acting under a supposition of hardship on one side, the tenure of property will be very insecure : Moore v. Small, 7 Harris 468.

*E. P. Jones* and *Marshall & Brown*, for defendants in error. —Interest in a *question* will not disqualify : Lincoln v. Wright, 11 Harris 76; Ott v. Houghton, 6 Casey 451. Best can obtain no fruits of this verdict, nor can it be used on this trial of his case : Breading v. Siegworth, 5 Casey 396; Lathrop v. Wightman, 5 Wright 298. Long's Appeal, *supra*, was a foreign attachment. It has not been ruled that execution attachments served the same day show *pro rata*.

The parties were all together at the sale, and their declarations were therefore evidence.

The books of Adams, Macklin & Co. were not produced when demanded; it was therefore proper for a witness who had examined them to prove that King and McCullough were paid in full. McCullough was not a party to the Fahnestock attachment; to exclude an offer to compromise it, must come from a party. The record in Newton's Case was not between the same parties: Breading v. Siegworth, *supra*. An honest creditor claiming through Adams, Macklin & Co. is not estopped, whilst they themselves would be as parties to the fraud.

[King *v.* Faber.]

The opinion of the court was delivered, January 23d 1866, by

AGNEW, J.—There was no error in admitting John Best an attaching creditor to testify. He was not interested in the verdict. Though interested in establishing a fund in the hands of King and McCullough for himself, he is not interested that Faber & Co. should establish it, for this lessens his own share in it. When other attaching creditors are entitled to share *pro rata* in the fund, the reason why the garnishee gives their attachments in evidence is to protect himself; otherwise the whole fund would be made liable to the plaintiff. The success of each creditor diminishes the fund proportionately. It has been decided in Breading *v.* Siegworth, 5 Casey 396, that an execution attachment is not a proceeding exclusively *in rem*, but also *in personam*, and a verdict and judgment in favour of the garnishee in one attachment is no bar to another by a different creditor. There is no substance in the first and ninth errors. Nor do we see any in the second bill of exceptions. The defendant did not require the offer to state a specific purpose. If good for any purpose, it was therefore competent. The plaintiff averred a contract between King and McCullough, and Adams, Macklin & Co., to buy in their property under their executions, for the benefit of the latter after satisfying their judgment; and also a fraud in preventing bidders from buying, and thus getting the property at an under value. The offer on its face tends to prove both points. But it is said the offer uses the word "parties," which does not specifically refer to King and McCullough. This is too nice a criticism. The offer proposed to show that King and McCullough and Adams, Macklin & Co. were together, and the word parties following, refers to all of them. If the proof actually restricted the statement to Adams, Macklin & Co., and the court had declined to confine it by instruction to the jury, the plaintiff in error ought to have exhibited the testimony to us to show that he was injured: Lothrop *v.* Wightman, 5 Wright 305.

There was no error in the third bill. Jenkins Jones was called to prove the value of the property. He did so in gross at $20,000. On an examination he stated he had a bill of the items as estimated by him. In permitting him to read them to the jury, the court only suffered him to state in detail what before he had stated in the aggregate, thus making his valuation more open to attack if unsound, and more satisfactory if reliable. A witness is always permitted to use a memorandum of particulars to assist his memory, where the subject consists of numerous items of account or of many articles. The memory cannot be expected to carry correctly a long list of articles and figures.

There is nothing whatever in the fourth bill. Why should not the testimony of Thomas Atterbury be admitted to prove that the judgments were paid in 1859? When offered to prove a fact

[King *v.* Faber.]

generally, it must be presumed he knew the fact properly, until he states the reverse. But it is said he only learned the payments from sundry books. How do we know this? We have not his testimony, and there was no special objection stated in the bill of exception. For aught we know, he saw the money paid. The fifth bill has still less in it. How do we know that it was not material to the trial to prove the value of the building in 1859? There is no special objection stated in the bill of exceptions, and the testimony is not before us to inform us of the course of the trial. For aught we know, King and McCullough's judgments were then paid off, and under the contract between the parties it was necessary to prove the value of the property then, in order to show the extent of the fund left for Adams, Macklin & Co.

The sixth bill is in the same predicament. We are asked to say that the testimony of Jacob L. Schwartz was incompetent to show that the defendants had any goods of Adams, Macklin & Co. in their hands, while there is not a line of his testimony before us. The seventh bill must share the fate of its fellows. How do we know, without the evidence, whether the fact that McCullough offered to pay an attaching-creditor in Baltimore fifty per cent. of his claim, was not germain to the cause. When left to guess at it, we can easily conceive that such a fact might be a link in the evidence, tending to prove that King and McCullough were acting under an arrangement with Adams, Macklin & Co. to pay their debts out of means in their hands. The special objection, that it was an offer of compromise, is unavailing in this case, and would only avail the defendants upon a question of liability to the Baltimore party.

Eighth error. The record of the feigned issue under the Sheriff's Interpleader Act was properly rejected, for the purpose was to show a former recovery, which if pleaded in form would be a plea in bar. But neither the parties nor subject of interest was the same. That was an issue ordered to protect the sheriff in his levy on specific goods, and the question for trial was the ownership in the particular goods and the sheriff's right to levy in that case. King and McCullough claimed as against the plaintiffs in the execution, but the present plaintiffs are not their privies. For the same reasons that the decision of one attachment would not bar the attachment of another creditor, as decided in 5 Casey, *supra*, the decision against the plaintiff in the execution would not bar the plaintiff in this attachment. The question was then the right of the plaintiffs in the execution to levy on the specific goods, but it is now whether King and McCullough have money or effects in their hands liable to be applied in payment of the debts of Adams, Macklin & Co. The plaintiffs claim through an alleged contract, which, while it left the property in the hands of King and McCul-

[King *v.* Faber.]

lough free from levy or execution, subjected the results under the arrangement, after satisfying their judgments, to attachment.

The answers of the court affirming the plaintiffs' two points require no vindication. There is nothing in the tenth and eleventh errors.

The twelfth, thirteenth, fourteenth and fifteenth errors all rest upon the evidence, none of which has been furnished except some detached portions, which are denied in the counter-statement. Errors committed in the trial of a cause must be shown by a bill of exceptions settled before the judge and sealed by him. Certainly nothing less than his notes of testimony, duly certified, will be taken here as evidence of the state of the facts. The paper-book in this case is made up against all rule, assigning for error in nearly every instance matters depending upon the evidence, and yet furnishing neither a bill of exceptions containing all the pertinent testimony, nor a duly certified copy of the judge's notes. It is not fair or courteous to the learned judge who tried the cause, to make his treatment of the facts the grounds of complaint, referring to his notes as proof and yet not to furnish them. The consequence of the omission is that the paper-books are at war with each other upon the facts, and are filled with harsh contradictions. We cannot approve of this practice.

There was no error in the mode of receiving the verdict. It was the best the judge could do under the circumstances, and exhibits his strong desire to prevent a mistrial and further costs. The sickness of the juror was beyond his control.

Finding no error in the record as returned, the judgment is affirmed.