# Commonwealth of Pennsylvania *v.* Dr. Albert W. Keene, Appellant.

*Evidence—Competency of dying declarations in abortion.*

The admission of evidence cannot be assigned for error, if it were competent for any purpose unless the party objecting first required its purpose to be stated.

An indictment for an attempt to procure miscarriage and an indictment for procuring an abortion were tried together resulting in a conviction on the first indictment and an acquittal on the second, evidence of the dying declaration of the mother was admitted under a general objection. *Held,* that the evidence was competent as all of the essential averments of both indictments were in issue.

*Evidence—Abortion—Dying declarations—Admissibility.*

Dying declarations having been made competent evidence in indictments for abortion, the nature of the issue in which they are admitted can make no difference in determining the intrinsic value of the evidence except that no conviction can be had on the uncorroborated declarations of the woman.

*Charge of court—Comments on dying declarations.*

The charge of the court is not open to criticism as to comments on the weight to be given to dying declarations when in such instructions as a connected whole the court pointed out to the jury the weak points in such evidence as well as the considerations which tend to equalize it in probative effect with evidence given under oath.

Argued March 8, 1898.    Appeal, No. 211, Oct. T., 1897, by defendant, from judgment of O. & T. Lancaster Co., Jan. Sess., 1897, No. 154, on verdict of guilty.    Before Rice, P. J., Wickham, Beaver, Reeder, Orlady, Smith and Porter, JJ. Affirmed.

Indictment to procure abortion.    Before Brubaker, J.

It appears from the record that defendant was charged upon two indictments with abortion.    One indictment charged him with procuring an abortion with an instrument, upon Eleanora Huss, on October 27, 1896, which caused her death.    Upon this indictment he was acquitted.    The other indictment charged him with having used an instrument upon the said Eleanora Huss, at the same date, with the intention to procure a miscarriage.    Upon this indictment he was convicted and the sentence of the court imposed a fine of $500, costs of prosecution, and undergo imprisonment by separate and solitary confinement at labor in the Eastern Penitentiary for two years, etc.    Defendant appealed.

*Errors assigned* were (1) in admitting in evidence the following offer and testimony on the part of the commonwealth during the examination of Mrs. Mary Emma Huss (mother of deceased), a witness, called by the commonwealth.    The offer is as follows: " Commonwealth offers to prove by Mrs. Mary Emma Huss, that on Saturday morning, November 21, 1896, between 3 and 4 o'clock, she had a conversation with her daughter, Eleanora Huss, at which time Eleanora said: ' Mother, I will never get well.'    I said, ' Nora, yes, you will.'    She

replied, 'No, mother, it is all done for.' She said, 'Dr. Keene took me in a room and put me on a lounge and used the instruments on me.' Q. What did she say about Dr. Keene? A. She said Dr. Keene was the fault of it. She said he had made an operation on her and that was the cause of her death. Q. Did she tell you where he had taken her? A. Yes, sir. Q. Where did it occur? A. In Dr. Keene's house, she said. I asked her whether he made this operation before Mr. McComsey. She said, 'No, mother, he didn't. He took me into another room and laid me on the lounge.' And I said, 'Did you suffer right away?' She said, 'Yes, I had pain so I could hardly get out of his office.' She said, 'He wanted me to drink some beer with him.' And she said, 'I wouldn't take it,' for that was a thing she didn't like. Q. Did she say what he used? A. Some kind of an instrument he used, she said. Q. Did she explain what it was? A. No. I don't suppose a child like that would know. Q. But it was an instrument he used? A. That is what she said." (2) In their charge to the jury in which they said: "Now, what was this dying declaration? I shall read it to you from the notes of testimony, so that I may not get wrong about it. I shall give it to you in brief, and it is this: She said: 'On Saturday morning between three and four o'clock, and I was fretting, and I had my hand up.' Q. What did she say? A. She said, 'Mother don't fret, for I have got to leave you all on account of Dr. Keene.' That was objected to. Q. What did she say? You can say what she said about whether she would get well or not. A. No. She said she wouldn't. She said, 'Mother, I can never get well, and I will have to leave you.' Q. What reply did you make? A. I told her I thought she was better than she was during the night. She said, 'No, mother, it is all done for me.' I said, 'No, Nora, I think you are better.' She said, 'No, mother, I can't get better.' Q. What did she say about Dr. Keene? A. She said Dr. Keene was the fault of it. She said he had made an operation on her and that was the cause of her death. Q. Did she tell you where he had taken her? A. Yes, sir. Q. Where did it occur? A. In Dr. Keene'e house, she said. I asked her whether he made this operation before Mr. McComsey. She said, 'No, mother, he didn't. He took me into another room and laid me on the lounge.' And I said, 'Did

you suffer right away?' She said, 'Yes, I had pain so I could hardly get out of the office.' She said, 'He wanted me to drink some beer with him' and she said, 'I wouldn't take it,' for that was a thing she didn't like. Q. Did she say what he used? A. Some kind of an instrument he used she said. Q. Did she explain what it was? A. No. I don't suppose a child like that would know. Q. But it was an instrument he used? A. That is what she said." (3) In their charge to the jury in which they said: "The general principle on which this species of evidence is admitted was stated by a learned judge of England long since in the case of a murder trial to be this: that they are declarations made in extremity, that is, made under a sense of impending death, when the party is at the point of death, and when every hope of this world is gone, when every motive to falsehood is silenced, and the mind is induced by the most powerful considerations to speak the truth. A situation so solemn and so awful is considered by the law as creating an obligation equal to that which is imposed by a positive oath in a court of justice. The dying declaration in this case is from a woman seventeen years of age. It is not disputed that she was pregnant with a child. She was a single woman. She was dying at the time the declaration was made; the doctor tells you so. If she knew that she was dying, and told her mother what her mother says she did, and you believe the mother's testimony as to that, the testimony, as we have just said, is recognized by the law as creating an obligation equal to that which is imposed by a positive oath in a court of justice. It is your sole duty to pass upon the testimony." (4) In allowing the following question, on direct examination of Dr. James A. Peoples, a witness, called by the commonwealth, and overruling objection thereto. The question and answer were as follows: "Q. Knowing the condition of Miss Eleanora Huss's mind, when you saw her, a few hours previous to her death, was she or was she not, in your opinion, of sufficient sound mind to make a statement intelligently? Objected to by defendant's counsel. Objection overruled. Bill of exceptions signed, sealed and filed for the defendant. A. At the time when I saw her she could make it; when aroused she could make intelligent answers when I saw her." (5) In their answer to appellant's first point, which point was: "There is not sufficient corroboration of an actual abor-

tion performed by the defendant, in support of the alleged dying declarations of the deceased, to warrant the jury in rendering a verdict of guilty. *Answer:* We refuse to answer the point in that way. We refuse to affirm the point." (6) In that portion of their charge to the jury in which they said: "Both of these charges are felonies. You can find him guilty of either offense; you cannot find him guilty of the two offenses, but you can find him guilty of either offense, or you can say, not guilty of either offense; provided that you find that the commonwealth has not made out its case, as I have already stated to you."

*B. Frank Eshleman* and *B. F. Davis,* for appellant.—It is well-settled law that dying declarations are only admissible in homicide cases. They were not competent in abortion suits, even though death ensued from the operation : Railing v. Com., 110 Pa. 100.

Under the Act of June 26, 1895, P. L. 387, dying declarations were admitted, where the woman dies in consequence of the criminal operation. The law remains unchanged by said act where the death of the woman does not ensue as a result of the operation.

The indictment upon which the appellant was convicted and sentenced does not allege that the woman died, and it is drawn under the 88th section of the Act of March 31, 1860, P. L. 404.

The fact that two indictments were tried together, should not militate against the defendant; hence this evidence was not admissible: Com. v. Toland, 11 Phila. 433; Com. v. Williamson, 46 Leg. Int. 281.

*Geo. A. Lane* and *D. F. Magee,* with them *B. C. Albe,* for the commonwealth.—The contention of the appellant is to the admission of the evidence objected to as not competent. The defendant should call upon the commonwealth to elect upon which indictment they will go to trial; failing in this, they cannot afterwards complain of the law governing the admission of evidence which subjects them to hardship: Com. v. Toland, 11 Phila. 433; Com. v. Travis, 13 W. N. C. 353.

The defendant took his chances of a lighter sentence by the verdict on the lesser charge; he cannot now complain: Com. v. Dupes, 14 C. C. 238.

The law is well settled that a man may be acquitted of an offense charged, and yet be convicted of a constituent offense involved in it: Com. v. Parker, 146 Pa. 343.

The crime of procuring an abortion can be proved by circumstantial evidence: Kehoe v. Com., 85 Pa. 127, supported by Com. v. Gumpert, 6 Luzerne L. R. 187.

OPINION BY RICE, P. J., May 9, 1898:

The defendant was charged in two indictments: first with having used an instrument upon the body of Eleanora Huss, a pregnant woman, with intent to procure her miscarriage (sec. 88 of the Penal Code); second, with having used the instrument with like intent, in consequence whereof she died (sec. 87). The two indictments were tried together; on the first the defendant was convicted, and on the second he was acquitted.

1. The precise question raised by the first and second assignments of error is whether proof of the dying declarations of the woman as to the cause of her injuries was admissible. It was undoubtedly competent in support of the averments of the second indictment, under the act of June 26, 1895, P. L. 387, entitled "An act making dying declarations competent in prosecutions for criminal abortions, when the subject shall die in consequence of such unlawful acts." Did the fact that the first indictment did not allege that she died in consequence of the injuries require a different ruling?

Before proceeding to a consideration and a decision of this question, it should be observed that when the offer was first made, the specific objections urged against the evidence were, not that it was incompetent under the pleadings, but (1) that the commonwealth had not shown by competent and satisfactory evidence that the declarant was of sound mind at the time the declarations were made; (2) that at that time she had an expectation and a hope of recovery; (3) that the act of 1895 is unconstitutional. After the commonwealth had introduced further testimony upon the points covered by the first two objections the offer was renewed and then a general objection was interposed which was overruled. At no time during the trial was the specific objection made, that the evidence was not competent in support of the charge contained in the first

indictment, nor was the court requested to instruct the jury, that it should not be considered by them, in making up their verdict thereon. We remark further that no assignment of error calls into question the omission of the court to charge the jury to that effect or its duty in that regard. It should be stated, however, that the court in explaining to the jury the purpose and scope of the act of 1895 used language which could only be construed as meaning that the act extended only to abortion cases in which the woman dies in consequence of the unlawful operation. Doubtless more specific instructions would have been given if they had been asked.

Having made it plain that the sole question raised by the first two assignments of error is as to the competency of the evidence and not as to its effect, it needs no argument nor citation of authorities to show that the correctness of the ruling is to be determined by the state of the record and of the evidence at .the time the offer was made and admitted. If it was not error to admit it then, the ruling of the court was not rendered erroneous by the verdict of the jury, nor by any inferences to be drawn therefrom. As the case stood at the time of the admission of the evidence all of the essential averments of both indictments were in issue, and the general rule is, that the admission of evidence cannot be assigned for error, if it were competent for any purpose, unless the party objecting first required its purpose to be stated. The rule is thus stated in Cullum v. Wagstaff, 48 Pa. 300: "The party offering evidence is bound, if requested, to state the purpose of it fully, and the party who objects must state his objection. If he decline to do so, it is good ground for the court to overrule a general objection; or if the record go up on a general objection only, the ruling of the court will be sustained if the evidence be proper for any purpose: Milliken· v. Barr, 7 Pa. 23; Richardson v. Stewart, 4 Binn. 198; Benner v. Hauser, 11 S. & R. 352; Smull v. Jones, 6 W. & S. 122. These rules are necessary to prevent injustice both to court and parties." See also McClelland v. Lindsay, 1 W. & S. 360; Peters v. Horbach, 4 Pa. 134; King v. Faber, 51 Pa. 387; Aitkin's Heirs v. Young, 12 Pa. 15. We see no good reason for making this case an exception to the general rule. By consenting to go to trial on both indictments before the same jury the issue being tried was virtually the same as it would have been, if, instead of two

indictments, the charges had been embraced in one indictment with two counts, as undoubtedly they might have been. The defendant was not forced into that situation but voluntarily accepted it with its disadvantages, as well as its advantages, and, hence, could not sustain a general objection to any competent testimony, as to the cause of the woman's death, although such testimony might not have been admissible, if her death had not been alleged in the indictment.

2. At common law dying declarations were admitted only where the death of the deceased was the subject of the charge and the circumstances and cause of death were the subject of the declarations, and in the application of this rule it was established by the great weight of authority that they were admissible in homicide cases only. They were not admissible on the trial of an indictment for abortion although death resulted: Railing v. Com., 110 Pa. 100. But the legislature has seen fit to make them admissible in such case "with like effect and under like limitations as apply to dying declarations in prosecutions for felonious homicide." Having been made competent evidence, the nature of the issue in which they are admitted can make no difference in determining the intrinsic value of the evidence. It may be great or it may be slight depending upon the circumstances of the case, but the evidence is in its nature the same whether it be given on a trial for felonious homicide, or for abortion, and, other things being equal, it is entitled to as much credit in one case as in the other, with this qualification imposed by legislature that in the latter case no conviction can be had on the uncorroborated declarations of the woman. To admit the evidence and then instruct the jury that it is of little, if any, value, because not given under the obligation of an oath and subject to cross-examination would practically nullify the statute. The statute was passed for a wise purpose, and because it had been demonstrated by experience that the same reason which lies at the foundation of the rule under which dying declarations are admitted in homicide cases made it necessary to admit such testimony in the prosecution of indictments for criminal abortion resulting in death, and it should not be given a construction which would defeat its manifest purpose.

The instruction given to the jury in the present case as to the consideration to be accorded to the dying declarations of

Eleanora Huss, should be taken as a whole. Immediately preceding the excerpt from his charge, quoted in the third assignment, the learned judge said:

" The law says that the dying declarations need not be in writing; they may be oral; just as they were in this case. We also say to you that the law is, as to the weight of these declarations, that when deliberately made, under a solemn and religious sense of impending dissolution, and concerning circumstances, in respect of which deceased was not likely to have been mistaken, they are entitled to great weight, if precisely identified ; yet it is always to be recollected, that the accused has not the power of cross-examination, a power quite as essential to the eliciting of all the truth, as the obligation of an oath can be ; and that where the witness has not a deep and strong sense of accountability to his Maker, and an enlightened conscience, the passion of anger and feelings of revenge may, as they have not unfrequently been found to do, affect the truth and accuracy of his statements ; especially, as the salutary and restraining fear of punishment for perjury is in such cases withdrawn."

Again, after giving the instructions complained of, he said:

" It is your sole duty to pass upon the testimony. It is the duty of the court to pass upon its admissibility, and after it has been admitted it is for you to pass upon. You are at liberty, and it is your duty to weigh all the circumstances under which the declaration was made, and to give the testimony only such credit as, upon the whole, you may think it deserves, from all the testimony that has been produced to you from the witness stand."

When the instructions are read as a connected whole it will be seen that the court pointed out to the jury the weak points in such evidence as well as the considerations which tend to equalize it in probative effect with evidence given under oath, and after all left the jury to determine what weight it was entitled to in this particular case. Thus viewed we find no substantial error in the instructions.

3. The act of 1895 provides " that before such statements shall be submitted to the jury as evidence the commonwealth shall by competent and satisfactory evidence prove that such woman was of sound mind at the time such ante mortem statements were made."

The testimony of Dr. Peoples, although not sufficient, of itself, to satisfactorily establish the fact that the woman was of sound mind at the exact hour when she made the ante mortem statement was nevertheless pertinent to the inquiry and was competent. The case does not rest on his testimony alone, nor was it essential that the fact be established by the testimony of experts. There was ample evidence of her mental capacity to warrant the admission of the evidence in the first instance and at the defendant's request the question was submitted to the jury under instructions to which no exception has been, or could be, taken. The fourth assignment is overruled.

4. The statute does not require that every detail of the ante mortem statement shall be established by independent proof or that the evidence shall be sufficient to convict without the aid of the statement. The evidence in corroboration should relate to some portion of the testimony which is material to the issue, but need not extend to every material fact. It should not merely tend to prove that an offense has been committed but should also tend to identify the defendant as the criminal or to show his connection with the offense. The evidence in the present case came fully up to the standard. If believed, it tended to prove that the defendant had performed an operation of some kind on Eleanora Huss in consequence of which she had a miscarriage. It was not absolutely essential to prove by testimony independently of her declarations that it was performed with an instrument in order to warrant the admission of the dying statement in evidence. The fifth assignment is overruled.

5. The sixth assignment does not require particular notice. If any error was committed in instructing the jury to the effect, that if they convicted the defendant of the offense charged in the second indictment they could not convict him of the constituent offense embraced in it which was charged in the first indictment, or if they convicted him on the first they could not convict him on the second indictment, it certainly did the defendant no harm.

The judgment is affirmed and the record remitted to the court below to the end that the sentence imposed be carried into effect.